Jeffrey G. Bradford, OSB No. 133080
Direct: 503.802.5724
Email: jeff.bradford@tonkon.com
Tonkon Torp LLP
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Facsimile: 503.274.8779

Brandon Wong (admitted *pro hac vice*)
bwong@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
695 Town Center Dr., 14th Floor
Costa Mesa, CA 92626
Telephone: (714) 371-2500
Facsimile: (714) 371-2550

Attorneys for Defendant GoodLeap, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MARIA ZARATE,

Plaintiff,

vs.

FREEDOM FOREVER OREGON, LLC, and GOODLEAP, LLC,

Defendants.

Case No. 3:26-CV-00678-SB

**DEFENDANT GOODLEAP, LLC'S MOTION TO DISMISS**

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1, counsel for Defendant GoodLeap, LLC conferred with counsel for Plaintiff on June 18, 2026 in good faith to attempt to resolve the dispute occasioning this Motion and have been unable to do so, thereby necessitating this Motion.

# TABLE OF CONTENTS

**Page**

MOTION ....... 1
MEMORANDUM OF POINTS AND AUTHORITIES ....... 1
I. INTRODUCTION ....... 1
II. FACTUAL BACKGROUND ....... 3
III. LEGAL STANDARD ....... 5
IV. ARGUMENT ....... 6
A. THE COURT SHOULD CONSIDER THE PPA IN RESOLVING THIS MOTION ....... 6
B. PLAINTIFF'S THEORIES OF GOODLEAP'S VICARIOUS LIABILITY FAIL ....... 8
1. The Holder Rule Does Not Apply ....... 9
2. Plaintiff Fails to Plead Agency ....... 11
C. PLAINTIFF FAILS TO STATE A DECEPTIVE TRADE PRACTICES ACT CLAIM AGAINST GOODLEAP ....... 12
D. PLAINTIFF'S FINANCIAL ABUSE CLAIM FAILS ....... 14
1. Plaintiff Fails to Allege the Requisite "Wrongful" Conduct ....... 14
2. Plaintiff Fails to Allege Either a "Taking" or an "Appropriation." ....... 16
V. CONCLUSION ....... 17

# TABLE OF AUTHORITIES

Page(s)

## CASES

*Abrego Abrego v. Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006) ....................7

*Adelsperge v. Elkside Dev. LLC*,
578 P.3d 189 (Or. 2025) ....................16

*Adelsperger v. Elkside Dev. LLC*,
568 P.3d 908 ....................16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................5

*Bell v. Oakland Cmty. Pools Project, Inc.*,
No. 19-CV-01308-JST, 2020 WL 13695114 (N.D. Cal. Oct. 14, 2020) ....................15

*Bohr v. Tillamook Cty. Creamery Ass'n*,
567 P.3d 413 (Or. 2025) ....................12

*Brizendine v. Visador Co.*,
437 F.2d 822 (9th Cir. 1970) ....................8

*Bull Mountain Meadows, LLC v. Frontier Commc'ns Nw., Inc.*,
386 P.3d 178 (Or. Ct. App. 2016) ....................11

*Church v. Woods*,
77 P.3d 1150 (Or. Ct. App. 2003) ....................14

*City of Portland v. HomeAway.com, Inc.*,
240 F. Supp. 3d 1099 (D. Or. 2017) ....................6

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ....................7

*Eads v. Borman*,
277 P.3d 503 (Or. 2012) (en banc) ....................11

*Gelber v. City of Willits*,
No. 23-CV-00681-JSC, 2023 WL 7003241 (N.D. Cal. Oct. 23, 2023) ....................7

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................7

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ....................6

*Johnson v. Fed. Home Loan Mortg. Corp.*,
793 F.3d 1005 (9th Cir. 2015) ....................6

*Kazia Digo, Inc. v. Smart Circle Int'l, LLC*,
No. C11-0544RSL, 2012 WL 4511375 (W.D. Wash. Sept. 28, 2012)....................................15

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) .......................................................................................................7

*Larrison v. Moving Floors, Inc.*,
873 P.2d 1092 (Or. Ct. App. 1994)..........................................................................................11

*Lauderdale v. NFP Ret., Inc.*,
No. 821CV00301JVSKES, 2024 WL 751005 (C.D. Cal. Feb. 23, 2024)...............................15

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) .......................................................................................................6

*Lee v. City of L.A.*,
250 F.3d 668 (9th Cir. 2001) .......................................................................................................5

*Lennard v. Yeung*,
No. CV 10–09322 MMM, 2012 WL 13006214 (C.D. Cal. Feb. 23, 2012) ............................12

*Leyden v. J. Crew Grp., LLC*,
No. 3:25-CV-01448-AB, 2026 WL 895702 (D. Or. Apr. 1, 2026) ..............................8, 12, 13

*Massey v. Biola Univ., Inc.*,
2020 WL 2476173 (C.D. Cal. Apr. 10, 2020), *report and rec. adopted,* 2020 WL 2468765 (May 13, 2020).............................................................................................................6

*Miler v. TD Bank USA, Nat'l Ass'n*,
No. 3:20-CV-00340-IM, 2022 WL 462119 (D. Or. Feb. 15, 2022).......................................12

*nexTUNE, Inc. v. McKinney*,
2013 WL 2403243 (W.D. Wash. May 31, 2013)........................................................................6

*Schmidt v. Noonkester*,
401 P.3d 266 (Or. Ct. App. 2017)............................................................................................14

*Standard Acc. Ins. Co. of Detroit, Mich. v. Winget*,
197 F.2d 97 (9th Cir. 1952) .........................................................................................................8

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) .....................................................................................................6

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ..................................................................................................6, 7

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2022) .......................................................................................................6

*Vaughn v. First Transit, Inc.*,
206 P.3d 181 (Or. 2009) ...........................................................................................................11

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) .....................................................................................................6

**STATUTES**

15 U.S.C. § 1602(f)...................................................................................................................10

Or. Rev. Stat. § 124.100(1)(a) ........ 14
Or. Rev. Stat. § 124.110(1)(a) ........ 7, 14
Or. Rev. Stat. § 646.608 ........ 12

**OTHER AUTHORITIES**

12 C.F.R. § 1026.2(a)(14) ........ 10
16 C.F.R. § 433.1(i) ........ 9
16 C.F.R. § 433.1(e) ........ 10
16 C.F.R. § 433.2(a) ........ 9
*Webster's Third New Int'l Dictionary* 106, 2330 (unabridged ed. 2002) ........ 16

**RULES**

Fed. R. Civ. P. 12(b) ........ 1
Fed. R. Civ. P. 12(b)(6) ........ 5, 6, 7

## MOTION

Pursuant to Fed. R. Civ. P. 12(b), Defendant GoodLeap, LLC ("GoodLeap") respectfully moves this Court to Dismiss Plaintiff Maria Zarate's ("Plaintiff") Complaint (ECF No. 1). In support of this Motion to Dismiss ("Motion"), GoodLeap respectfully submits and relies upon the incorporated Memorandum of Points and Authorities below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

GoodLeap respectfully files this Motion to dismiss a Complaint that, at bottom, attempts to transform a straightforward contractual relationship into a wide-ranging tort case untethered from any well-pleaded facts. Even taking Plaintiff's allegations at face value, the Complaint suffers from a fundamental and fatal defect that runs through both asserted causes of action: It never plausibly alleges that GoodLeap itself did anything wrongful. Instead, the Complaint relies almost entirely on alleged conduct by a different entity and its non-party salesperson, coupled with conclusory assertions that GoodLeap should somehow be held responsible. That approach falls far short of the applicable pleading standards and provides no basis to proceed on either claim.

The factual narrative is telling. Plaintiff alleges that a salesperson affiliated with co-defendant Freedom Forever visited her home and made certain representations regarding the purported benefits of a solar installation. But the Complaint is equally clear about what did not occur: Plaintiff does not allege that anyone from GoodLeap ever visited her, spoke with her, or made any representations to her at all. Nor does the Complaint identify any communication between Plaintiff and GoodLeap that could plausibly support liability. Plaintiff nonetheless seeks to impose liability on GoodLeap for alleged misrepresentations by others. That disconnect between the alleged conduct and the named defendant is not a mere pleading gap; it is a fatal flaw.

Plaintiff attempts to bridge that gap with two theories of vicarious liability, but both fail. The first rests on the Federal Trade Commission's Holder Rule, which by its terms applies only to a narrow category of consumer credit contracts not applicable here. The second, Plaintiff's alternative agency theory, fares no better. Agency requires factual allegations demonstrating both a manifestation of assent by the alleged principal and the right to control the alleged agent. The Complaint offers neither. It instead supplies a single conclusory assertion that Freedom Forever and its salesperson were acting as GoodLeap's agents. That sort of bare legal conclusion cannot substitute for facts and cannot subject GoodLeap to responsibility for the alleged acts of others.

These defects are independently fatal to Plaintiff's claim under Oregon's Unlawful Trade Practices Act. As pleaded, that claim rests entirely on alleged misrepresentations or omissions regarding the nature and cost of the solar arrangement. But again, the Complaint does not allege that GoodLeap made any such statements. It attributes all sales communications to a non-party unrelated to GoodLeap. That alone forecloses the claim against GoodLeap.

Compounding these problems, the claim sounds in fraud but does not come close to satisfying the heightened pleading standard that applies in that context. The Complaint does not identify who at GoodLeap purportedly made any misrepresentation, when any such statement was made, or how any specific representation was false. Instead, it impermissibly conflates defendants and relies on vague references to unspecified statements made at unspecified times. That approach does not provide the particularity required for a claim premised on deceptive practices.

Plaintiff's financial abuse claim suffers from the same deficiencies and adds new ones. Plaintiff seemingly contends that GoodLeap wrongfully took money from Plaintiff. But the Complaint does not plausibly allege any wrongful conduct by GoodLeap and attributes all purported misconduct to others, offering no factual basis to connect GoodLeap to any alleged

deception or forgery. Absent such allegations, there is no basis to conclude that any payments received by GoodLeap were obtained through improper means or with an improper motive.

The financial abuse claim also fails at a more basic level because it does not clearly allege what statutory theory, if any, is actually being pursued. The Complaint does not articulate whether a "taking" or an "appropriation," nor does it supply facts that would satisfy either concept. It also does not explain how the routine collection of payments allegedly owed under a contract amounts to either. These ambiguities are not mere technicalities; they reflect the absence of a coherent theory of liability grounded in any facts.

In short, Plaintiff seeks to impose liability on GoodLeap without alleging that GoodLeap made any misrepresentation, engaged in any misconduct, or had any relationship with the individuals who allegedly did. The Complaint substitutes conclusory labels and legal theories for factual content and, in doing so, fails to provide a plausible basis for relief. Because Plaintiff fails to state a claim as to either of her two causes of action against GoodLeap, GoodLeap respectfully requests that the Court grant the Motion and dismiss the Complaint.

## II. FACTUAL BACKGROUND[1]

Plaintiff is a homeowner residing in Independence, Oregon. Compl. ¶¶ 3, 7. Defendant Freedom Forever Oregon LLC ("Freedom Forever") is a residential solar power sales and installation company. Compl. ¶ 1. GoodLeap is a California limited liability company helping homeowners access energy-efficient and sustainable home improvement projects and solar energy generation systems. Compl. ¶ 5.[2]

---

[1] The facts as alleged in the Complaint are assumed to be true for purposes of this Motion only. GoodLeap specifically reserves, and does not waive, its right to challenge any and all of Plaintiff's factual allegations at a later stage of this case, should that become necessary.

[2] *See also About Us*, GOODLEAP, LLC, https://www.goodleap.com/about-us (last visited June 16, 2026).

In the spring of 2025, non-party and Freedom Forever salesperson Alex Mendoza allegedly visited Plaintiff's residence "a few times" and spoke with her in English and Spanish about installing solar panels on her roof. Compl. ¶ 6. After "a few conversations with Mr. Mendoza," Plaintiff agreed to have solar panels put on her roof, allegedly based on statements from Mr. Mendoza that the solar panels "would save her money and would not cost her anything." Compl. ¶ 6. Plaintiff does not allege that anyone else ever visited her residence to speak with her about solar panels.

Plaintiff purports not to own a computer or send emails but does own a smartphone. Compl. ¶ 7. According to Plaintiff, one day "someone" set up an email account in her name and used that account to digitally sign a power purchase contract with GoodLeap. Compl. ¶ 8. The contract in question is a Power Purchase Agreement ("PPA") between Plaintiff and GoodLeap. *See* Declaration of Brandon Wong ("Wong Decl.") Ex. A, ECF No. 8-1. The PPA is not a loan for the purchase of solar panels. Instead, the PPA is an agreement to purchase from GoodLeap the solar power generated from the system for a period of 25 years. *Id.* at A-1; *see also* Compl. ¶ 10.

Plaintiff claims not to have signed documents or reviewed "emails related to any transactions with" Freedom Forever or GoodLeap. Compl. ¶ 7. She claims that any agreement was "forge[d]." Compl. ¶ 10. Plaintiff concedes, however, that she orally agreed via telephone to have solar panels installed on her roof. Compl. ¶ 7. As part of that telephone conversation, she allegedly "was not told" that she would have to pay for either the solar panels or generated solar power she would receive following the installation. Compl. ¶ 7. Plaintiff does not allege with whom she spoke on the phone or when. *See generally id.*

"[A] few months" after Plaintiff spoke with Mr. Mendoza, Freedom Forever installed solar panels on her roof. Compl. ¶ 9. Sometime thereafter, Plaintiff received a paper statement from GoodLeap for the solar power generated by the system. Compl. ¶ 9. Plaintiff alleges that she was

surprised to receive a statement due to Mr. Mendoza's alleged representations that a rooftop solar system would cost her nothing and that she would not have to pay for solar power. Compl. ¶ 9.

The PPA clearly specifies Plaintiff's monthly payment to GoodLeap for each year of the 25-year term. *See* Wong Decl. Ex. A at A-35. During the first year, Plaintiff's monthly payment is approximately $90.27. *Id.*; *see also* Compl. ¶ 14 (alleging having to pay "more than $90.00 per month to GoodLeap"). Plaintiff alleges that "somehow" both "Defendants" "set up automatic withdrawals from [Plaintiff's] checking account." Compl. ¶ 10. Plaintiff does not allege how either Defendant would have obtained Plaintiff's banking information without her knowledge or approval.

Plaintiff brings two causes of action against GoodLeap and Freedom Forever. The first is a claim under Oregon's Unlawful Trade Practices Act for alleged "misrepresentations or omissions about the nature and qualities of the solar power sale . . . ." Compl. ¶ 13. *See generally* Compl. ¶¶ 11–15. Plaintiff also brings a financial abuse claim against both Defendants based on the alleged misrepresentations and forgery, as well as GoodLeap's receipt of payments from Plaintiff under the PPA. Compl. ¶¶ 16–21.

## III. LEGAL STANDARD

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim for relief. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court takes "all factual allegations set forth in the complaint . . . as true and construed in the light most favorable to plaintiffs." *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001). However, only well-pleaded facts are given a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) (internal quotations omitted). A "formulaic recitation of the elements" of a claim is likewise insufficient, *Iqbal*, 556 U.S. at 678,

and conclusory allegations that "simply recite the elements of a cause of action" without supplying underlying facts to support those elements are not "entitled to the presumption of truth," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). In short, under Rule 12(b)(6), this Court need not accept as true any "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012); *see also nexTUNE, Inc. v. McKinney*, 2013 WL 2403243, at *4 (W.D. Wash. May 31, 2013) ("[S]peculation unsupported by any factual allegation is insufficient to survive a motion to dismiss under 12(b)(6).") (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)). Rather, "[t]o survive a Rule 12(b)(6) dismissal, a complaint must allege enough specific facts to provide both 'fair notice' of the particular claim being asserted and 'the grounds upon which it rests.'" *Massey v. Biola Univ., Inc.,* 2020 WL 2476173, at *5 (C.D. Cal. Apr. 10, 2020), *report and rec. adopted,* 2020 WL 2468765 (May 13, 2020)). "If a plaintiff's allegations contradict documents referenced in the complaint, a court need not accept those allegations as true." *City of Portland v. HomeAway.com, Inc.*, 240 F. Supp. 3d 1099, 1111 (D. Or. 2017) (citing *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

## IV. <u>ARGUMENT</u>

### A. The Court Should Consider the PPA in Resolving this Motion.

Ordinarily, courts are limited to the complaint and any documents attached thereto when resolving a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2022). But a court may consider certain materials, including "documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "Documents not attached to a complaint whose contents are alleged and whose authenticity no party questions may

be incorporated by reference into a complaint if the plaintiff's pleading refers extensively to the document or the document forms the basis of the plaintiff's claims." *Gelber v. City of Willits*, No. 23-CV-00681-JSC, 2023 WL 7003241, at *1 n.2 (N.D. Cal. Oct. 23, 2023) (citing *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012)); *see, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1080 (N.D. Cal. 2022) (incorporating documents mentioned in the complaint for fraud-based claims). "A court 'may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Davis*, 631 F.3d at 1160 (quoting *Ritchie*, 342 F.3d at 908). The incorporation by reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006) (noting "the policy concern underlying" incorporation by reference doctrine: "Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based").

Here, the Complaint references the PPA extensively in several paragraphs. *See e.g.,* Compl. ¶¶ 1, 8–10, 12–14, 18. And the PPA forms the basis of both of Plaintiff's claims against GoodLeap. Plaintiff's Oregon Unlawful Trade Practices Act necessarily depends on alleged "misrepresentations or omissions about the nature and qualities of the **solar power sale** made to" Plaintiff. Compl. ¶ 13 (emphasis added); *see also id.* ¶ 14 (alleging required "loss" under the statute takes the "form of payments she has made to GoodLeap on the contract." Likewise, Plaintiff's financial abuse claim requires a "wrongful taking or appropriation of money or property," (*see* Or. Rev. Stat. § 124.110(1)(a)). Plaintiff alleges that "GoodLeap collected money from" her under the "solar power purchase contract and the automatic payment process . . . ." Compl. ¶ 18(b). Without the PPA and the payment obligation it created, Plaintiff would have no

claims against GoodLeap. *See, e.g.*, *Leyden v. J. Crew Grp., LLC*, No. 3:25-CV-01448-AB, 2026 WL 895702, at *4 (D. Or. Apr. 1, 2026) (granting request to incorporate by reference "Defendant's in-store placards" because the complaint "is largely based on Defendant's alleged failure to disclose the methodology behind its comparable value reference prices, making it "proper to consider documents at the motion to dismiss stage which illuminate Defendant's methodology, even if not referenced or relied on in the Complaint, because Plaintiff's claims necessarily depend on such material").

Accordingly, because the Complaint incorporates the PPA by reference, the Court should rely on it and assume that the entire PPA is true for purposes of resolving this Motion.

**B. Plaintiff's Theories of GoodLeap's Vicarious Liability Fail.**

Plaintiff attempts to plead two theories of vicarious liability against GoodLeap to hold it responsible for the alleged actions of co-defendant Freedom Forever and non-party Mendoza. First, Plaintiff alleges that GoodLeap can be held vicariously liable under the Federal Trade Commission Act's Holder Rule that applies to certain contracts not applicable here. Second, Plaintiff alleges that defendant Freedom Forever and non-party Alex Mendoza are GoodLeap's agents, making their alleged conduct that of GoodLeap. Vicarious liability is an exception to the general rule against holding one liable for the alleged wrongs of another and should be applied sparingly. *Brizendine v. Visador Co.*, 437 F.2d 822, 827 (9th Cir. 1970) ("[U]nder Oregon law, a defendant cannot, except under circumstances not here present, be held liable for the conduct of another tortfeasor."); *Standard Acc. Ins. Co. of Detroit, Mich. v. Winget*, 197 F.2d 97, 107 (9th Cir. 1952) ("And, while vicarious liability exists in our law, it is the exception rather than the rule."). Plaintiff fails as to both and therefore both must be rejected.

### 1. The Holder Rule Does Not Apply.

Under the Holder Rule, it is an unfair or deceptive practice under the Federal Trade Commission Act to "[t]ake or receive a consumer credit contract which fails to contain" a provision stating that "any holder of the consumer credit contract is subject to all claims and defenses which the debtor could assert against the seller of goods or services obtained pursuant hereto or with the proceeds hereof." 16 C.F.R. § 433.2(a) (capitalization omitted). Plaintiff alleges that her PPA with GoodLeap is subject to the Federal Trade Commission's Holder Rule, ostensibly subjecting GoodLeap to all claims and defenses that she could assert against Freedom Forever as the seller. Compl. ¶ 8. Plaintiff is wrong.

First, the Holder Rule is not even relevant because GoodLeap has always been the original contracting party with Plaintiff for the sale of solar power. *See generally* Wong Decl. Ex. A. Plaintiff alleges no other contract with Freedom Forever, or that GoodLeap agreed to assume such a contract.[3]

Second, the Holder Rule does not apply in any event because the PPA is not a qualifying "consumer credit contract." Under the Holder Rule, a "consumer credit contract" is:

> Any instrument which evidences or embodies a debt arising from a "Purchase Money Loan" transaction or a "financed sale" as defined in paragraph (d) and (e) of this section.

*See* 16 C.F.R. § 433.1(i). In turn, a "purchase money loan" is:

> A cash advance which is received by a consumer in return for a "Finance Charge" within the meaning of the Truth in Lending Act and Regulation Z, which is applied, in whole or substantial part, to a purchase of goods or services from a seller who

[3] Exhibit 4 to the PPA is a separate Installation Agreement between Plaintiff and Freedom Forever relating to the installation of the solar energy system. *See* Wong Decl. Ex. A at A-26–A-28. The Installation Agreement explicitly provides that Plaintiff was not obligated to pay Freedom Forever for the installation. *Id.* at A-26 § 2. Plaintiff does not allege that Freedom Forever failed to perform—quite the opposite. *See* Compl. ¶ 9 (noting that "Freedom installed solar panels on [her] roof").

> (1) refers consumers to the creditor or
>
> (2) is affiliated with the creditor by common control, contract, or business arrangement.

*Id*. § 433.1(d). GoodLeap did not advance any cash to Plaintiff in connection with the PPA. The PPA is an agreement to purchase solar power from a solar energy system purchased by GoodLeap. *See, e.g.*, Wong Decl. Ex. A at A-4 § 1 ("This Power Purchase Agreement . . . is the consumer contract between the undersigned Consumer(s) . . . listed above and GoodLeap, LLC . . . covering the sale to you of the power produced by the solar panel system (the 'System') described below. . . . GoodLeap as Provider agrees to sell to you, and you agree to buy from GoodLeap, all of the power produced by the System."); *id*. at A-37 § 1 ("You are entering an agreement to lease a solar electricity generating system to be installed on your property.") (capitalization omitted). *See generally* Compl. (no allegations that GoodLeap lent money to Plaintiff). The PPA is therefore not a "purchase money loan."

The PPA also is not a "financed sale" under the Holder Rule:

> ***Financing a sale***. Extending credit to a consumer in connection with a "Credit Sale" within the meaning of the Truth in Lending Act and Regulation Z.

16 C.F.R. § 433.1(e). Under the Truth in Lending Act, "credit" means "the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment." 15 U.S.C. § 1602(f); *see* 12 C.F.R. § 1026.2(a)(14) ("Credit means the right to defer payment of debt or to incur debt and defer its payment."). GoodLeap did not offer "credit" to Plaintiff under the PPA. Under the PPA's terms, "GoodLeap agree[d] to sell [Plaintiff] the power generated by the System for three hundred (300) months starting on the Activation Date." *See* Wong Decl. Ex. A at A-5 § 2. No amount of money was "Due Up-Front" (*see id*. at A-4, second column in table before § 1), and Plaintiff had "no installation or up-front costs." *Id*. at A-5 § 4. Instead, Plaintiff is obligated to pay for solar electricity provided by GoodLeap on a monthly basis. *Id*. Indeed, the PPA is no

different than a consumer's agreement with an electrical utility company to pay for power that she used during a given period. Because the PPA is not an extension of credit, it is not a "financed sale" subject to the Holder Rule.

Because the PPA is not a "consumer credit contract" subject to the Holder Rule, Plaintiff may not use that rule as a basis to impose vicarious liability on GoodLeap for alleged acts committed by Freedom Forever and non-party Mendoza.

**2. Plaintiff Fails to Plead Agency.**

Plaintiff also attempts to impose vicarious liability on GoodLeap through common law agency. This effort likewise fails.

Under Oregon law, there are "two requirements for the existence of an agency relationship: '(1) manifestation by the principal to the agent that the agent may act on his account, and consent by the agent to so act; and (2) the agent must be subject to the principal's control.'" *Bull Mountain Meadows, LLC v. Frontier Commc'ns Nw., Inc.*, 386 P.3d 178, 180 (Or. Ct. App. 2016) (citing *Vaughn v. First Transit, Inc.*, 206 P.3d 181, 186 (Or. 2009)). "The principal's consent to an agency relationship may be shown by an express agreement or it may be implied from the circumstances and from conduct of the parties." *Id.* at 180 (citing *Eads v. Borman*, 277 P.3d 503, 508 (Or. 2012) (en banc)). But "[i]n all cases . . . , both the principal's consent to the agency and the principal's right to control the agent are essential elements of the relationship." *Larrison v. Moving Floors, Inc.*, 873 P.2d 1092, 1094 (Or. Ct. App. 1994).

Plaintiff alleges zero facts to establish a purported agency relationship between GoodLeap and Freedom Forever. Instead, Plaintiff makes only a conclusory one-sentence allegation in her entire complaint regarding any alleged agency: "Further, Freedom and its employee, Alex Mendoza, were acting as the agents of GoodLeap in the process of selling GoodLeap's solar power contract to [Plaintiff], making GoodLeap vicariously liable for Mendoza's and Freedom's

actions[.]" Compl. ¶ 8. That is it. This is woefully insufficient to establish agency. *See, e.g.*, *Miler v. TD Bank USA, Nat'l Ass'n*, No. 3:20-CV-00340-IM, 2022 WL 462119, at *5 n.9 (D. Or. Feb. 15, 2022) (doubting whether plaintiff alleged sufficient facts to establish an agency relationship between the defendants and stating that "Plaintiff cannot rely on legal conclusions of agency that are cast as factual matters") (citing *Lennard v. Yeung*, No. CV 10–09322 MMM (AGRx), 2012 WL 13006214, at *15 (C.D. Cal. Feb. 23, 2012)).

Accordingly, Plaintiff fails to allege agency such that GoodLeap could be held vicariously liable for the purported acts of Freedom Forever and Mendoza.

### C. Plaintiff Fails to State a Deceptive Trade Practices Act Claim Against GoodLeap.

To state a DTPA claim, a plaintiff must allege "'that (1) the defendant committed an unlawful trade practice enumerated in ORS 646.608; (2) the plaintiff suffered an ascertainable loss of money or property; and (3) the plaintiff's loss was caused by the defendant's unlawful trade practice.'" *Leyden*, 2026 WL 895702, at *4 (quoting *Bohr v. Tillamook Cty. Creamery Ass'n*, 567 P.3d 413, 416 (Or. 2025)). Plaintiffs must also establish that a defendant's allegedly unlawful trade practice was willful. *Id.*

Plaintiff's UTPA claim here fails for at least two independent reasons. First, Plaintiff has failed to allege that GoodLeap committed an unlawful trade practice under the statute. Although Plaintiff alleges four purported misrepresentations or omissions made about the PPA by "Defendants" collectively, *see* Compl. ¶ 13(1)–(4), Plaintiff has not, for the reasons demonstrated above, adequately alleged that GoodLeap itself made any of those misrepresentations or omissions.[4] Nor are there ***any*** allegations that ***GoodLeap*** ever visited Plaintiff's home or spoke

[4] In any event, to the extent that the PPA itself could be construed as a representation to Plaintiff by GoodLeap, the PPA clearly and accurately indicates the nature and cost of the transaction between the parties. Nowhere does the PPA provide that Plaintiff could obtain solar power at no cost to her.

with her at any point about solar panels, solar electricity, or the cost of either. *See* Compl. ¶ 6 ("**Freedom** solicited sales of solar power door-to-door in [Plaintiff's neighborhood in the spring of 2025.") (emphasis added); *id*. (alleging that "[a] salesperson named **Alex Mendoza** who worked for **Freedom** came to [Plaintiff's] home a few times" and that *Mendoza* "won her trust" "after a few conversations" "based on **his statements** that they would save her money and would not cost her anything") (emphases added); *id*. at 7 (alleging, vaguely, via the passive voice that "[s]he was not told that she would have to pay anything for the panels or the solar power she would receive as a result of the installation"); *id*. at 9 ("**Freedom** installed solar panels on [Plaintiff's] roof a few months after **Alex Mendoza** talked her into having them installed."). Plaintiff therefore fails to plead that GoodLeap, specifically, committed an allegedly unlawful trade practice.

Second, and similarly, to the extent that Plaintiff has pleaded a "loss of money"—rather than accurately describe her contractual obligation with GoodLeap—she fails to plead that such "loss" was caused by GoodLeap's allegedly unlawful trade practices. Again, the Complaint nowhere alleges that GoodLeap ever made any representations or omissions to Plaintiff, let alone spoke to her. Rather, the Complaint makes clear that non-party Alex Mendoza was the only person with whom Plaintiff spoke about solar panels and solar power.

Because Plaintiff fails to plead two of the three necessary elements of her UTPA claim against GoodLeap.[5] [6]

[5] GoodLeap does not concede that Plaintiff has alleged the final "loss" of her UTPA claim but does not challenge it in this Motion.

[6] Finally, for these same reasons, Plaintiff's claim that GoodLeap "acted with recklessness and outrageous indifference to a highly unreasonable risk of harm" (Compl. ¶ 15) that purports to entitle her to punitive damages also fails.

**D. Plaintiff's Financial Abuse Claim Fails.**

Finally, Plaintiff fails to adequately allege a financial abuse claim against GoodLeap and for this reason also this claim should be dismissed.

Under Oregon law, a plaintiff may bring a financial abuse claim "[w]hen a person wrongfully takes or appropriates money or property of a vulnerable person . . . ." *See* Or. Rev. Stat. § 124.100(1)(a). "Accordingly, the elements of a statutory claim for financial elder abuse are (1) a taking or appropriation, (2) of money or property, (3) that belongs to an elderly person, and (4) the taking must be wrongful." *Schmidt v. Noonkester*, 401 P.3d 266, 269 (Or. Ct. App. 2017) (citing *Church v. Woods*, 77 P.3d 1150, 1153 (Or. Ct. App. 2003)). At a minimum, Plaintiff fails to plead the first and fourth elements of the claim.

**1. Plaintiff Fails to Allege the Requisite "Wrongful" Conduct.**

Plaintiff fails to plead that any taking or appropriation by GoodLeap (addressed further below) was "wrongful." "Wrongful" likewise is an undefined term, but Oregon courts interpret it as follows:

> Its ordinary meaning is "full of wrong: INJURIOUS, UNJUST, UNFAIR." More specifically, it has a well-understood meaning in the law of torts with regard to interference with legal interests. Conduct generally is "wrongful" if it is carried out in pursuit of an improper motive or by improper means. "Improper means" must be independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of. Improper means, for example, include "violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood." The use of undue influence also constitutes an "improper means," in that it involves the procurement of an unfair advantage. That dual meaning of the word "wrongful," focusing alternatively on the defendant's motives or the means by which property was taken, is sensible in the context of ORS 124.110(1)(a). Accordingly, we adopt it.

*See Church v. Woods*, 77 P.3d 1150, 1153 (Or. Ct. App. 2003) (citations omitted); *see also Schmidt v. Noonkester*, 401 P.3d 266, 269 (Or. Ct. App. 2017) (citing *Church*).

Here, the only supposed "improper means" that Plaintiff alleges are that "Defendants," corporately, sold her "a solar power contract based on false representations and forgery." Compl. ¶ 18(a). But because 1) Plaintiff fails to plead agency between Freedom Forever and GoodLeap, *see supra* Section IV.B.2, and 2) Plaintiff does not allege that GoodLeap specifically made any misrepresentations to her, she cannot rely on any alleged misrepresentations or other wrongdoing by Freedom Forever and Alex Mendoza. Similarly, Plaintiff's forgery allegation is devoid of critical information. Plaintiff does not allege who allegedly forged the PPA. *See* Compl. ¶ 10 (alleging, using the passive voice, that "an email account . . . was created to forge [her] electronic signature" without identifying who created the account or forged the agreement); *id.* (alleging, using the passive voice, that the PPA "was fraudulently signed" but not identifying who allegedly signed it); *see also id.* ¶ 18(a) (alleging that "Defendants sold [Plaintiff] a solar power contract based on . . . forgery" but stopping short of alleging that either Defendant was responsible for the forgery).

For similar reasons, Plaintiff does not allege an improper motive on behalf of GoodLeap. As previously noted, Plaintiff nowhere alleges that GoodLeap ever visited her residence or otherwise discussed solar panels with her. As alleged in the Complaint, GoodLeap was a willing offeror of solar power to Plaintiff. There is nothing improper about running a business that provides products or services to a willing market. *Lauderdale v. NFP Ret., Inc.*, No. 821CV00301JVSKES, 2024 WL 751005, at *25 (C.D. Cal. Feb. 23, 2024) ("[T]he profit motive is not unlawful in and of itself."); *Bell v. Oakland Cmty. Pools Project, Inc.*, No. 19-CV-01308-JST, 2020 WL 13695114, at *2 (N.D. Cal. Oct. 14, 2020) ("A motive is not improper simply because it is pecuniary."); *Kazia Digo, Inc. v. Smart Circle Int'l, LLC*, No. C11-0544RSL, 2012 WL 4511375, at *3 (W.D. Wash. Sept. 28, 2012) ("Simply pursuing one's own pecuniary interests in good faith is not an improper motive.")

Because Plaintiff fails to allege either improper motive or means by GoodLeap, she does not allege that any "taking" or "appropriation" (if there indeed even was one—*see infra*) was "wrongful." Plaintiff's elder abuse claim must therefore be dismissed.

**2. Plaintiff Fails to Allege Either a "Taking" or an "Appropriation."**

Second, Plaintiff fails to allege a taking or an appropriation. Although the statute does not define "take" or "appropriate," Oregon courts hold that "take" means "'to transfer into one's own keeping : to enter into or arrange for possession, ownership, or use of,'" while "appropriate" means "'to claim or use as if by an exclusive or preeminent right.'" *Adelsperger v. Elkside Dev. LLC*, 568 P.3d 908, 925 (quoting *Webster's Third New Int'l Dictionary* 106, 2330 (unabridged ed. 2002)), *opinion adhered to as modified on reconsideration sub nom*. *Adelsperger v. Elkside Dev. LLC*, 578 P.3d 189 (Or. 2025).

Plaintiff does not allege whether there was a "taking" or an "appropriation," despite the Oregon Supreme Court's guidance distinguishing those terms. Instead, she conflates the concepts by seemingly attempting to allege both. *See* Compl. ¶ 18 (parroting the statute's "wrongful taking or appropriation" formulation); *id.* ¶ 19 (alleging "Defendants' . . . wrongful taking or appropriation"). Plaintiff fails. First, Plaintiff does not allege an appropriation, because GoodLeap is not alleged to have "claim[ed] or use[d]" Plaintiff's money "as if by an exclusive or preeminent right." Second, there was no "taking" by GoodLeap, Plaintiff voluntarily paid GoodLeap for solar power as agreed under the PPA. *Compare* Compl. ¶ 14 (alleging loss "in the form of payments she [Plaintiff] has made to GoodLeap on the contract") (emphasis added), *with id.* ¶ 18(b) ("GoodLeap collected money from Plaintiff . . . .").

Because Plaintiff fails to allege either "taking" or an "appropriation" by GoodLeap, Plaintiff's elder abuse claim must be dismissed.

## V. CONCLUSION

For the foregoing reasons, GoodLeap respectfully requests that the Court grant the Motion and dismiss the Complaint.

Dated: June 22, 2026

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

/s/ Brandon Wong
Brandon Wong (admitted *pro hac vice*)
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Telephone: (714) 371-2500
Facsimile: (714) 371-2550
bwong@manatt.com

TONKON TORP LLP

Jeffrey G. Bradford (OSB No. 133080)
1300 SW Fifth Ave., Suite 2400
Telephone: (503) 802-5724
Facsimile: (503) 274-8779
jeff.bradford@tonkon.com

*Attorneys for Defendant GoodLeap, LLC*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 5,318 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

**CERTIFICATE OF SERVICE**

I hereby certify that on the date given below, I electronically filed the foregoing MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following persons:

Hope Del Carlo, Esq. (hope@elemental.law)

DATED this 22nd day of June, 2026, at Placentia, California.

/s/ Brandon Wong
Brandon Wong