Jeffrey G. Bradford, OSB No. 133080
Direct: 503.802.5724
Email: jeff.bradford@tonkon.com
Tonkon Torp LLP
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Facsimile: 503.274.8779

Brandon Wong (admitted *pro hac vice*)
bwong@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
695 Town Center Dr., 14th Floor
Costa Mesa, CA 92626
Telephone: (714) 371-2500
Facsimile: (714) 371-2550

Attorneys for Defendant GoodLeap, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MARIA ZARATE,

Plaintiff,

vs.

FREEDOM FOREVER OREGON, LLC, and GOODLEAP, LLC,

Defendants.

Case No. 3:26-CV-00678-SB

**DEFENDANT GOODLEAP, LLC'S MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## LR 7-1 CERTIFICATION

Pursuant to Local Rule 7-1, counsel for Defendant GoodLeap, LLC conferred with counsel for Plaintiff on July 27, 2026 in good faith to attempt to resolve the dispute occasioning this Motion and have been unable to do so, thereby necessitating this Motion.

**TABLE OF CONTENTS**

**Page**

MOTION ........ 1
MEMORANDUM OF POINTS AND AUTHORITIES ........ 1
I. INTRODUCTION ........ 1
II. FACTUAL BACKGROUND ........ 3
III. LEGAL STANDARD ........ 5
IV. ARGUMENT ........ 8
A. THE COURT SHOULD CONSIDER THE PPA IN RESOLVING THIS MOTION ........ 8
B. PLAINTIFF'S DIRECT THEORIES OF LIABILITY AGAINST GOODLEAP FAIL. ........ 10
1. Plaintiff Fails to State a Deceptive Trade Practices Act Claim Against GoodLeap ........ 10
2. Plaintiff Fails to State a Financial Abuse Claim Agiannst GoodLeap. ........ 11
C. PLAINTIFF'S AGENCY THEORY OF LIABILITY AGAINST GOODLEAP ALSO FAILS. ........ 15
V. CONCLUSION ........ 19

## TABLE OF AUTHORITIES

Page(s)

### CASES

*A.B. v. Hilton Worldwide Holdings Inc.*,
484 F. Supp. 3d 921 (D. Or. Sept. 8, 2020) ....................15

*Abrego Abrego v. Dow Chem. Co.*,
443 F.3d 676 (9th Cir. 2006) ....................8

*Adelsperger v. Elkside Development LLC*,
568 P.3d 908 (Or. 2025), *opinion adhered to as modified on reconsideration sub nom.*, *Adelsperger v. Elkside Dev. LLC*, 578 P.3d 189 (Or. 2025) ....................12

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ....................5

*Barba v. Seung Heun Lee*,
2010 WL 11515658 (D. Ariz. Aug. 25, 2010) ....................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................5

*Bell v. Oakland Cmty. Pools Project, Inc.*,
2020 WL 13695114 (N.D. Cal. Oct. 14, 2020) ....................13

*Beverly v. Cty. of Orange*,
2022 WL 14003695 (9th Cir. Oct. 24, 2022) ....................19

*Bohr v. Tillamook Cty. Creamery Ass'n*,
567 P.3d 413 (Or. 2025) ....................10

*Brizendine v. Visador Co.*,
437 F.2d 822 (9th Cir. 1970) ....................15

*Bull Mountain Meadows, LLC v. Frontier Commc'ns Nw., Inc.*,
386 P.3d 178 (Or. Ct. App. 2016) ....................15

*Casavelli v. Johanson*,
2020 WL 7643170 (D. Ariz. Dec. 23, 2020) ....................6

*Church v. Woods*,
77 P.3d 1150 (Or. Ct. App. 2003) ....................11, 12, 14

*City of Portland v. HomeAway.com, Inc.*,
240 F. Supp. 3d 1099 (D. Or. 2017) ....................6

*Davis v. HSBC Bank Nevada, N.A.*,
691 F.3d 1152 (9th Cir. 2012) ....................8

*Eads v. Borman*,
277 P.3d 503 (Or. 2012) (en banc) ....................15, 16

*Ebeid ex rel. United States v. Lungwitz*,
616 F.3d 993 (9th Cir. 2010) ....................6

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
751 F.3d 990. (9th Cir. 2014) ....................6

*ESHA Research, LLC v. RLH Assets*, *LLC*,
2025 WL 2697107 (D. Or. Sep. 22, 2025)....................7

*Fenimore v. Specialized Loan Servicing, LLC*,
2026 WL 821112 (D. Or. Mar. 25, 2026)....................14

*Gelber v. City of Willits*,
2023 WL 7003241 (N.D. Cal. Oct. 23, 2023)....................8

*Hammerling v. Google LLC*,
615 F. Supp. 3d 1069 (N.D. Cal. 2022) ....................8

*Harkness v. Platten*,
375 P.3d 521 (Or. 2016) ....................19

*Hernandez v. Jefferson Cty. Sheriff's Office*,
2020 WL 7766987 (D. Or. Oct. 9, 2020)....................16

*In re Cattell*,
2020 WL 3053130, (Bankr. D. Or. June 8, 2020) ....................19

*In re Fresh Process Potatoes Antitrust Litig*.,
834 F. Supp. 2d 1141 (D. Idaho Dec. 2, 2011)....................17

*In re Gilead Scis. Sec. Litig.*,
536 F.3d 1049 (9th Cir. 2008) ....................5

*Jackson v. Fischer*,
931 F. Supp. 2d 1049 (N.D. Cal. Mar. 15, 2013) ....................7, 17

*Johnson v. Fed. Home Loan Mortg. Corp.*,
793 F.3d 1005 (9th Cir. 2015) ....................6

*Kazia Digo, Inc. v. Smart Circle Int'l, LLC*,
2012 WL 4511375 (W.D. Wash. Sept. 28, 2012)....................13

*Khoja v. Orexigen Therapeutics, Inc.*,
899 F.3d 988 (9th Cir. 2018) ....................8

*Lake v. Valais Ventures, LLC*,
2025 WL 384297 (D. Or. Feb. 4, 2025)....................13

*Larrison v. Moving Floors, Inc.*,
873 P.2d 1092 (Or. Ct. App. 1994)....................15

*Larson v. Liberty Mut. Fire Ins. Co.*,
2012 WL 93181 (D. Haw. Jan. 10, 2012)....................17

*Latham v. PWCC Marketplace*,
2022 WL 226807 (D. Or. Jan. 25, 2022) ....................7

*Lazy Y Ranch Ltd. v. Behrens*,
546 F.3d 580 (9th Cir. 2008) ....................6

*Lee v. City of L.A.*,
250 F.3d 668 (9th Cir. 2001) ....................5

*Lennard v. Yeung*,
2012 WL 13006214 (C.D. Cal. Feb. 23, 2012)....................16

*Leyden v. J. Crew Grp., LLC*,
2026 WL 895702 (D. Or. Apr. 1, 2026) ....................9, 10

*Massey v. Biola Univ., Inc.*,
2020 WL 2476173 (C.D. Cal. Apr. 10, 2020), *report and rec. adopted,* 2020 WL 2468765 (May 13, 2020)....................6

*Miler v. TD Bank USA, Nat'l Ass'n*,
2022 WL 462119 (D. Or. Feb. 15, 2022)....................16

*Murphy v. DirecTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) ....................19

*Neel v. Lee*,
504 P.3d 26 (Or. Ct. App. 2021)....................14

*nexTUNE, Inc. v. McKinney*,
2013 WL 2403243 (W.D. Wash. May 31, 2013)....................5

*Parducci v. Overland Solutions, Inc.*,
399 F. Supp. 3d 969 ....................6

*Schaffer Family Investors, LLC v. Sonnier*,
120 F. Supp. 3d 1028 (C.D. Cal. Aug. 13, 2015) ....................17

*Schmidt v. Noonkester*,
401 P.3d 266 (Or. Ct. App. 2017)....................11, 12, 14

*Standard Acc. Ins. Co. of Detroit, Mich. v. Winget*,
197 F.2d 97 (9th Cir. 1952) ....................15

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ....................5

*State v. Bevil*,
376 P.3d 294 (Or. Ct. App. 2016)....................14

*Strawn v. Farmers Ins. Co. of Or.*,
258 P.3d 1199, 1209, *adhered to on reconsideration*, 256 P.3d 100 (Or. 2011)....................7

*Swartz v. KPMG LLP*,
476 F.3d 756 (9th Cir. 2007) ....................7, 17

*Taylor v. Ramsay-Greding Construction Co.*,
196 P.3d 532 (Or. 2008) ....................16

*Top Service Body Shop, Inc. v. Allstate Ins. Co.*,
582 P.2d 1365 (Or. Ct. App. 1978)....................12, 13

*Unigestion Holdings, S.A. v. UPM Technology, Inc.*,
444 F. Supp. 3d 1240 (D. Or. Mar. 17, 2020)....................16

*United States v. Ritchie*,
342 F.3d 903 (9th Cir. 2003) ....................8

*Usanovic v. Americana, L.L.C.*,
775 F.3d 1133 (D. Nev. Mar. 31, 2025) ....................16

*Van Buskirk v. Cable News Network, Inc.*,
284 F.3d 977 (9th Cir. 2022) ....................8

*Vaughn v. First Transit, Inc.*,
206 P.3d 181 (Or. 2009) ....................15

*Vess v. Ciba-Geigy Corp. USA*,
317 F.3d 1097 (9th Cir. 2003) ....................6

*Williams v. Yamaha Motor Co. Ltd.*,
851 F.3d 1015 (9th Cir. 2017) ....................16

*Wilson v. Hewlett-Packard Co.*,
668 F.3d 1136 (9th Cir. 2012) ....................5

*Winters v. Grand Caribbean Cruises Inc.*,
2021 WL 511217 (D. Ariz. Feb. 11, 2021)....................16

*Wolfe v. City of Portland*,
566 F. Supp. 3d 1069 (D. Or. Oct. 8, 2021)....................15

**STATUTES**

Or. Rev. Stat. § 124.100....................1, 4, 14

Or. Rev. Stat. § 124.100(1)(a)....................11

Or. Rev. Stat. § 124.110(1)(a)....................9

Or. Rev. Stat. § 646.605....................1

Or. Rev. Stat. § 646.608....................4

**RULES**

Fed. R. Civ. P. 8(a)(2)....................6

Fed. R. Civ. P. 9(b) ....................6

Fed. R. Civ. P. 12(b) ....................1

Fed. R. Civ. P. 12(b)(6)....................5

## MOTION

Pursuant to Fed. R. Civ. P. 12(b), Defendant GoodLeap, LLC ("GoodLeap") respectfully moves this Court to Dismiss Plaintiff Maria Zarate's ("Plaintiff") First Amended Complaint ("FAC"). ECF No. 15. In support of this Motion to Dismiss ("Motion"), GoodLeap respectfully submits and relies upon the incorporated Memorandum of Points and Authorities below.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I. INTRODUCTION

The gravamen of Plaintiff's FAC is that an employee-salesperson of defendant Freedom Forever Oregon, LLC ("Freedom Forever") misrepresented certain benefits of a solar installation for her home. While Plaintiff admits that she agreed to the solar installation, she alleges she did so in reliance on Freedom Forever's salesperson representing that there would be no charge. Plaintiff further alleges that unbeknownst to her, an unknown "person" or "persons" set up an email account on her behalf and created and forged documents obligating her to pay for the resulting power from the solar installation. On this basis, she asserts one claim under Oregon's Unlawful Trade Practices Act pursuant to ORS 646.605, et seq. ("UTPA" claim) and another for Financial Abuse of a Vulnerable Person pursuant to ORS 124.100, et seq. ("Financial Abuse" claim), against both Freedom and GoodLeap.

Glaringly missing from the FAC are any factual allegations of wrongful conduct by GoodLeap. Plaintiff does not allege that anyone from GoodLeap visited her home, spoke with her, made any representations to her or otherwise interacted with her. Plaintiff does not allege the nature or extent of any relationship between GoodLeap and Freedom Forever, its salesperson or these unidentified "person" or "persons" who allegedly forged her signature. Nor does Plaintiff allege facts that GoodLeap even knew about the alleged misrepresentations or forgery. At most, Plaintiff alleges that Freedom Forever's salesperson sold a GoodLeap power purchase agreement that

GoodLeap honored and enforced pursuant to its terms. Thus, to the extent Plaintiff seeks to hold GoodLeap directly liable, her claims fall woefully short.

Plaintiff's alternative theory to hold GoodLeap vicariously liable under an agency theory fares no better. Agency, which can be express or apparent, requires factual allegations demonstrating both a manifestation of assent by the alleged principal and the right to control the alleged agent. The FAC offers neither. It instead formulaically recites the legal elements of agency devoid of any supporting facts and parrots the conclusion that Freedom Forever's employee-salesperson also doubled as GoodLeap's agent. Those bare legal conclusions cannot substitute for facts and cannot subject GoodLeap to responsibility for the alleged acts of others.

While Plaintiff's allegations under a direct or vicarious theory of liability are insufficient under even a notice pleading standard, because her claims sound in fraud and forgery, they are subject to Rule 9(b)'s heightened pleading standard. That standard applies not only when fraud or forgery is pleaded as a standalone claim, but also when those allegations form the factual basis of other claims as well as to corresponding agency allegations. The FAC comes nowhere close to satisfying that heightened standard as to any alleged wrongdoing by GoodLeap or any purported agency relationship. Instead, it impermissibly attributes conduct to unidentified "persons" or "Defendants" collectively and concludes that Freedom Forever's salesperson acted as GoodLeap's agent without any supporting facts.

Because Plaintiff fails to state a claim as to either of her two causes of action against GoodLeap under a direct or vicarious theory of liability, GoodLeap respectfully requests that the Court grant the Motion and dismiss the FAC. As this is now Plaintiff's second attempt to plead her claims to cure these deficiencies, dismissal with prejudice is warranted.

## II. FACTUAL BACKGROUND[1]

Plaintiff is a homeowner residing in Independence, Oregon. FAC ¶¶ 3, 7. Defendant Freedom Forever is a residential solar power sales and installation company. FAC ¶ 1. GoodLeap is a California limited liability company helping homeowners access energy-efficient and sustainable home improvement projects and solar energy generation systems. FAC ¶ 5.

In the spring of 2025, non-party and Freedom Forever employee-salesperson Alex Mendoza (aka Gerardo Torres) allegedly visited Plaintiff's residence "a few times" and spoke with her in English and Spanish about installing solar panels on her roof. FAC ¶ 6. After "a few conversations with Mr. Mendoza he won her trust, and she agreed to have solar panels put on her roof, based on his statements that they would save her money and would not cost her anything." FAC ¶ 6. Plaintiff does not allege that anyone else ever visited her residence to speak with her about solar panels or made any representations to her.

Plaintiff remembers agreeing to have the solar panels installed as part of a phone conversation. FAC ¶¶ 7, 9. But she claims that she did not sign any documents related to the solar arrangement. FAC ¶ 7. Instead, she alleges that one day "a person" or "other persons" set up an email account in her name and used that account to digitally sign and "forge" a power purchase contract with GoodLeap. FAC ¶¶ 8, 10.

The contract in question is a Power Purchase Agreement ("PPA") between Plaintiff and GoodLeap. *See* Declaration of Brandon Wong ("Wong Decl.") & Ex. A, ECF Nos. 18, 19. The PPA is not a loan for the purchase of solar panels. Instead, the PPA is an agreement to purchase from GoodLeap the solar power generated from the system for a period of 25 years. Ex. A at A-1; *see also* FAC ¶ 10.

---

[1] The facts as alleged in the FAC are assumed to be true for purposes of this Motion only. GoodLeap specifically reserves, and does not waive, its right to challenge any and all of Plaintiff's factual allegations at a later stage of this case, should that become necessary.

"[A] few months" after Plaintiff spoke with Mr. Mendoza, Freedom Forever installed solar panels on her roof. FAC ¶ 9. Sometime thereafter, Plaintiff received a paper statement from GoodLeap for the solar power generated by the system. FAC ¶ 9. Plaintiff alleges that she was surprised to receive a statement based on Mr. Mendoza's alleged representations that a rooftop solar system would cost her nothing and that she would not have to pay for solar power. FAC ¶ 9. She also alleges that "Defendants" "set up automatic withdrawals from [her] checking account." FAC ¶ 10. She does not allege how either Defendant would have obtained Plaintiff's banking information without her knowledge or approval or Plaintiff providing this information herself.

The PPA clearly specifies Plaintiff's monthly payment to GoodLeap for each year of the 25-year term. *See* Wong Decl. Ex. A at A-35. During the first year, Plaintiff's monthly payment is approximately $90.27. *Id.*; *see also* FAC ¶ 14 (alleging having to pay "more than $90.00 per month to GoodLeap").

Plaintiff brings two causes of action against GoodLeap and Freedom Forever. The first is a claim under Oregon's Unlawful Trade Practices Act § 646.608 for alleged "misrepresentations or omissions about the nature and qualities of the solar power sale" and specifically Mr. Mendoza's alleged misrepresentations that she would not have to pay for the solar panels or power. FAC ¶ 13. The second is a Financial Abuse claim under ORS § 124.100, et seq. based on the alleged "misrepresentations and forgery," as well as GoodLeap's enforcement of the PPA. FAC ¶¶ 16–21.

This is now Plaintiff's second attempt to plead her claims. On April 6, 2026, Plaintiff filed her original complaint ("Complaint"). ECF No. 1. On June 22, 2026, GoodLeap filed a Motion to Dismiss. ECF No. 8. GoodLeap's first Motion to Dismiss, like this Motion, challenged the sufficiency of Plaintiff's allegations against GoodLeap under both direct and vicarious theories of liability. *Id.* On July 13, 2026, instead of opposing the Motion to Dismiss, Plaintiff filed the FAC. ECF No. 15.

As relevant to the current Motion to Dismiss, the FAC makes two principal changes. First, ostensibly acknowledging the merits of arguments in GoodLeap's first Motion to Dismiss, the FAC deletes allegations seeking to hold GoodLeap vicariously liable under the Federal Trade Commission Act's Holder Rule, 16 CFR Part 433. *Compare* ECF No. 1, ¶ 8, *with* ECF No. 15, ¶ 8. Second, the FAC includes additional conclusory agency allegations devoid of facts (FAC ¶ 1) and repeats the conclusion that Mr. Torres and other unidentified "persons" acted as GoodLeap's agent. FAC ¶¶ 6, 8, 10, 13, 18.

## III. <u>LEGAL STANDARD</u>

A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim for relief. When reviewing a motion to dismiss pursuant to Rule 12(b)(6), a court takes "all factual allegations set forth in the complaint . . . as true and construed in the light most favorable to plaintiffs." *Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001). However, only well-pleaded facts are given a presumption of truth. *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Naked allegations without factual enhancements "stop[] short of the line between possibility and plausibility of entitlement to relief." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) (internal quotations omitted). A "formulaic recitation of the elements" of a claim is likewise insufficient, *Iqbal*, 556 U.S. at 678, and conclusory allegations that "simply recite the elements of a cause of action" without supplying underlying facts to support those elements are not "entitled to the presumption of truth," *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). Under Rule 12(b)(6), this Court need not accept as true any "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 n.4 (9th Cir. 2012); *see also nexTUNE, Inc. v. McKinney*, No. C12-1974 TSZ, 2013 WL 2403243, at *4 (W.D. Wash. May 31, 2013) ("[S]peculation unsupported by any factual allegation is insufficient to survive a motion to dismiss under 12(b)(6).") (citing *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008)).

Rather, "[t]o survive a Rule 12(b)(6) dismissal, a complaint must allege enough specific facts to provide both 'fair notice' of the particular claim being asserted and 'the grounds upon which it rests.'" *Massey v. Biola Univ., Inc.,* No. 2:19-cv-09626-CJC-JDE, 2020 WL 2476173, at *5 (C.D. Cal. Apr. 10, 2020), *report and rec. adopted,* 2020 WL 2468765 (May 13, 2020)). "If a plaintiff's allegations contradict documents referenced in the complaint, a court need not accept those allegations as true." *City of Portland v. HomeAway.com, Inc.*, 240 F. Supp. 3d 1099, 1111 (D. Or. 2017) (citing *Johnson v. Fed. Home Loan Mortg. Corp.*, 793 F.3d 1005, 1007 (9th Cir. 2015); *Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 588 (9th Cir. 2008).

Rule 8 requires a complaint to include a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Claims sounding in fraud or mistake are subject to a more exacting standard under Rule 9(b) and require a party to allege "the circumstances constituting fraud" or the "who, what, when, where and how of the misconduct charged." Fed. R. Civ. P. 9(b); *Ebeid ex rel. United States v. Lungwitz*, 616 F.3d 993, 998 (9th Cir. 2010) (citation omitted). While Rule 9(b) allows fraudulent intent to be alleged generally, the plausibility analysis of *Twombly* and *Iqbal* still apply. *Eclectic Properties East, LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 n. 5. (9th Cir. 2014).

Rule 9(b)'s heightened pleading standard is not limited to stand alone claims for fraud or misrepresentation. It also extends to: **(1)** forgery allegations (*Casavelli v. Johanson*, No. CV-20-00497-PHX-JAT, 2020 WL 7643170, at *11 (D. Ariz. Dec. 23, 2020) (holding alleged claims of forgery and fraud subject to Rule 9(b)'s heightened pleading standard)); **(2)** when fraud or forgery are alleged as part of another claim (*Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (where a claim is said to be "grounded in fraud" or to "sound in fraud" the pleading of the claim as a whole must satisfy Rule 9(b)); *see also Parducci v. Overland Solutions, Inc.*, 399 F. Supp. 3d 969, 979 (N.D. Cal. July 17, 2019) (holding California statutory financial elder abuse

claims sounded in fraud subject to Rule 9(b))); and **(3)** corresponding agency allegations (*Jackson v. Fischer*, 931 F. Supp. 2d 1049, 1061–62 (N.D. Cal. Mar. 15, 2013) ("where a plaintiff alleges that a defendant is liable for fraud under an agency theory, Rule 9(b) requires that the existence of the agency relations be pled with particularity") (citing *Swartz v. KPMG LLP*, 476 F.3d 756, 764–65 (9th Cir. 2007)).

To determine whether UTPA and Financial Abuse claims sound in fraud subject to Rule 9(b)'s heightened pleading standards, federal courts compare the alleged course of conduct to the elements of fraud under state law. *ESHA Research, LLC v. RLH Assets*, *LLC*, No. 3:25-cv-00880-AB, 2025 WL 2697107, at *7 (D. Or. Sep. 22, 2025) (holding UTPA claim grounded in fraud subject to Rule 9(b)) (quoting *Latham v. PWCC Marketplace*, No. 3:21-cv-01381-MO, 2022 WL 226807, at *2 (D. Or. Jan. 25, 2022) (same)). There are five elements to common-law fraud in Oregon: (1) "the defendant made a material misrepresentation that was false;" (2) "the defendant did so knowing that the representation was false;" (3) "the defendant intended the plaintiff to rely on the misrepresentation;" (4) "the plaintiff justifiably relied on that misrepresentation;" and (5) "the plaintiff was damaged as a result of that reliance." *Strawn v. Farmers Ins. Co. of Or.*, 258 P.3d 1199, 1209, *adhered to on reconsideration*, 256 P.3d 100 (Or. 2011)

Here, both of Plaintiff's claims are premised on a course of conduct that fits the elements of fraud. FAC ¶¶ 13, 18. She specifically alleges that: (1) Mr. Mendoza made false representations (FAC ¶¶ 7, 9); (2) that he did so intentionally (FAC ¶ 15); (3) that he intended her to rely upon those representations by gaining her trust (FAC ¶ 7); (4) Plaintiff in fact relied on those statements (FAC ¶¶ 7, 9); and (5) resulting damages (FAC ¶ 9). Plaintiff additionally alleges "forgery" to support her Financial Abuse claim, which is grounded in allegations of the fraudulent creation of accounts and signing of documents on her behalf without her knowledge or consent. FAC ¶¶ 10,

18. Thus, although Plaintiff's claims fail under Rule 8's more permissive pleading standards, they also fail under Rule 9(b)'s more stringent standards, which apply here.

## IV. ARGUMENT

### A. The Court Should Consider the PPA in Resolving this Motion.

Ordinarily, courts are limited to the complaint and any documents attached thereto when resolving a motion to dismiss. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2022). But a court may consider certain materials, including "documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment." *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003). "Documents not attached to a complaint whose contents are alleged and whose authenticity no party questions may be incorporated by reference into a complaint if the plaintiff's pleading refers extensively to the document or the document forms the basis of the plaintiff's claims." *Gelber v. City of Willits*, No. 23-CV-00681-JSC, 2023 WL 7003241, at *1 n.2 (N.D. Cal. Oct. 23, 2023) (citing *Davis v. HSBC Bank Nevada, N.A.*, 691 F.3d 1152, 1160 (9th Cir. 2012)); *see, e.g.*, *Hammerling v. Google LLC*, 615 F. Supp. 3d 1069, 1080 (N.D. Cal. 2022) (incorporating documents mentioned in the complaint for fraud-based claims). "A court 'may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6).'" *Davis*, 631 F.3d at 1160 (quoting *Ritchie*, 342 F.3d at 908). The incorporation by reference "doctrine prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims." *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018); *see also Abrego Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681–82 (9th Cir. 2006) (noting "the policy concern underlying"

incorporation by reference doctrine: "Preventing plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting references to documents upon which their claims are based").

Here, the FAC references the PPA extensively in several paragraphs. *See e.g.,* FAC ¶¶ 1, 6, 8–10, 12–14, 18. And the PPA forms the basis of both of Plaintiff's claims against GoodLeap. Plaintiff's UTPA claim necessarily depends on alleged "misrepresentations or omissions about the nature and qualities of the **solar power sale** made to" Plaintiff and about the "solar power contract." FAC ¶ 13, 13(1) (emphasis added); *see also id*. ¶ 14 (alleging required "loss" under the statute takes the "form of payments she has made to GoodLeap on the contract."). Likewise, Plaintiff's Financial Abuse claim requires a "wrongful taking or appropriation of money or property." *See* Or. Rev. Stat. § 124.110(1)(a). And Plaintiff alleges that "Defendants' enforcement of the illegal contract" and GoodLeap's "acceptance of Plaintiff's checks and payments" pursuant to the contract supports her claim. FAC ¶ 18.

Without the PPA and the payment obligation it created, Plaintiff would have no claims against GoodLeap. *See, e.g.*, *Leyden v. J. Crew Grp., LLC*, No. 3:25-CV-01448-AB, 2026 WL 895702, at *4 (D. Or. Apr. 1, 2026) (granting request to incorporate by reference "Defendant's in-store placards" because the complaint "is largely based on Defendant's alleged failure to disclose the methodology behind its comparable value reference prices, making it "proper to consider documents at the motion to dismiss stage which illuminate Defendant's methodology, even if not referenced or relied on in the FAC, because Plaintiff's claims necessarily depend on such material").

Accordingly, because the FAC incorporates the PPA by reference, the Court should rely on it and assume that the entire PPA is true for purposes of resolving this Motion.

**B. Plaintiff's Direct Theories of Liability Against GoodLeap Fail.**

It is not clear whether Plaintiff seeks to hold GoodLeap directly liable for her claims as she asserts both claims against "Defendants directly, and/or through their actual or apparent agents. . . ." FAC ¶¶ 13, 18. There are two defendants and she does not specify which she seeks to hold liable directly, vicariously or both. To the extent she seeks to hold GoodLeap directly liable, both claims fail because she does not attribute any wrongful conduct to GoodLeap.

**1. Plaintiff Fails to State a Deceptive Trade Practices Act Claim Against GoodLeap.**

To state a UTPA claim, Plaintiff must allege "'that (1) the defendant committed an unlawful trade practice enumerated in ORS 646.608; (2) the plaintiff suffered an ascertainable loss of money or property; and (3) the plaintiff's loss was caused by the defendant's unlawful trade practice.'" *Leyden*, 2026 WL 895702, at *4 (quoting *Bohr v. Tillamook Cty. Creamery Ass'n*, 567 P.3d 413, 416 (Or. 2025)). Plaintiff must also establish that a defendant's allegedly unlawful trade practice was willful. *Id*.

Here, Plaintiff's UTPA claim is entirely premised on the affirmative misrepresentations of Freedom Forever's employee-salesperson, Mr. Mendoza. She specifically alleges that Mr. Mendoza told her the solar panels "would save her money and would not cost her anything" and that such misrepresentations violate ORS 646.608(1)(e), (j), (k) and (s). FAC ¶¶ 6, 13; *see also* FAC ¶ 1 ("The salesperson who solicited her [Mr. Mendoza] told her that she could have solar panels installed on her house that would greatly reduce her electricity bill but would cost her nothing."); FAC ¶ 9 ("Ms. Zarate consented to installation via phone call in reliance on 'Mr. Mendoza's' representations made to her . . . .").

Plaintiff does not identify ***any*** misrepresentations made by GoodLeap. She does not allege that GoodLeap ever visited her home or spoke to her at all, let alone about solar panels, solar

electricity, or the cost of either. Plaintiff therefore fails to plead that GoodLeap, specifically, committed an allegedly unlawful trade practice, that any purported loss was caused by such unalleged conduct, or that any conduct of GoodLeap was willful. Because Plaintiff fails to plead these necessary elements of her UTPA claim against GoodLeap, her claim should be dismissed.[2] [3]

**2. Plaintiff Fails to State a Financial Abuse Claim Agianst GoodLeap.**

Under Oregon law, a plaintiff may bring a financial abuse claim "[w]hen a person wrongfully takes or appropriates money or property of a vulnerable person . . . ." *See* Or. Rev. Stat. § 124.100(1)(a). "Accordingly, the elements of a statutory claim for financial elder abuse are (1) a taking or appropriation, (2) of money or property, (3) that belongs to an elderly person, and (4) the taking must be wrongful." *Schmidt v. Noonkester*, 401 P.3d 266, 269 (Or. Ct. App. 2017) (citing *Church v. Woods*, 77 P.3d 1150, 1153 (Or. Ct. App. 2003)). Here, Plaintiff fails to properly allege at least the first and fourth element of her Financial Abuse claim.

**a. Plaintiff Fails to Allege any Wrongfulness by GoodLeap.**

"Wrongful" is an undefined term under ORS 124.100, et seq., but Oregon courts interpret it as follows:

> Its ordinary meaning is "full of wrong: INJURIOUS, UNJUST, UNFAIR." More specifically, it has a well-understood meaning in the law of torts with regard to interference with legal interests. Conduct generally is "wrongful" if it is carried out in pursuit of an improper motive or by improper means. "Improper means" must be independently wrongful by reason of statutory or common law, beyond the mere fact of the injury complained of. Improper means, for example, include "violence, threats, intimidation, deceit, misrepresentation, bribery, unfounded litigation, defamation and disparaging falsehood." The use of undue influence also constitutes an "improper means," in that it involves the procurement of an unfair advantage. That dual meaning of the word "wrongful," focusing alternatively on

[2] GoodLeap does not concede that Plaintiff has alleged an ascertainable "loss" either, of her UTPA claim but does not challenge it in this Motion.

[3] Finally, for these same reasons, Plaintiff's claim that "Defendants acted with recklessness and outrageous indifference to a highly unreasonable risk of harm" (FAC ¶ 15) that purports to entitle her to punitive damages also fails to the extent that is alleged against GoodLeap.

> the defendant's motives or the means by which property was taken, is sensible in the context of ORS 124.110(1)(a). Accordingly, we adopt it.

*See Church v. Woods*, 77 P.3d 1150, 1153 (Or. Ct. App. 2003) (citations omitted); *see also Schmidt*, 401 P.3d at 269 (citing *Church*).

With respect to improper means, the alleged wrongful means must be attributable to the defendant. *See Schmidt*, 401 P.3d at 268 (trial court granted directed verdict finding no improper means where alleged coercion in contract formation was based on conduct by defendant's son). With respect to improper motive, the motive must be knowingly injurious, such as to inflict injury on the plaintiff. *Adelsperger v. Elkside Development LLC,* 568 P.3d 908, 928, 931 (Or. 2025), *opinion adhered to as modified on reconsideration sub nom*. *Adelsperger v. Elkside Dev. LLC*, 578 P.3d 189 (Or. 2025). A defendant acting in its own business interests, based on its own understanding of its legal obligations without more is not an improper motive or otherwise wrongful. *Top Service Body Shop, Inc. v. Allstate Ins. Co.*, 582 P.2d 1365, 1372 (Or. Ct. App. 1978) (defendant's "pursuit of its own business purposes as it saw them [does not] support an inference of an alleged improper purpose . . . .").

Here, Plaintiff premises her Financial Abuse claim on "misrepresentations and forgery" and "Defendants' enforcement of the [PPA] . . . ." FAC ¶ 18. As to the former, Plaintiff attributes the alleged misrepresentations to Freedom Forever's employee-salesperson Mr. Mendoza (FAC ¶¶ 1, 6, 9), and she attributes the alleged forgery at one point to an unidentified "person" (FAC ¶ 8), and at a later point to unidentified "persons" (FAC ¶ 10). She does not, however, attribute any misrepresentations or forgery specifically to GoodLeap. Therefore, to the extent her Financial Abuse claim is premised on "misrepresentations and forgery," she fails to allege any corresponding conduct, let alone wrongful conduct, directly attributable to GoodLeap.

Her claim to the extent premised on GoodLeap's enforcement of the PPA fares no better. First, Plaintiff does not even offer that fact to support the alleged wrongfulness of any taking. Rather, she offers it to establish the taking or appropriation element. FAC ¶ 18 ("Defendants' enforcement of the illegal contract constitutes a wrongful taking or appropriation of the Plaintiff's fixed income . . . ."). The only wrongful conduct alleged to support her Financial Abuse claim are the purported misrepresentations and forgery, which as set forth above, are not attributable to GoodLeap. FAC ¶ 18.

Second, to the extent Plaintiff attempts to rely upon GoodLeap's enforcement of the PPA to independently support the wrongfulness element, she does not attribute any improper means or motive to GoodLeap. Plaintiff voluntarily paid GoodLeap for solar power as agreed under the PPA. FAC ¶ 14 (alleging damages "in the form of payments she has made to GoodLeap on the contract"). All GoodLeap did was receive the payments that Plaintiff made. *See* FAC ¶ 18 (noting GoodLeap's "acceptance of Plaintiff's checks and payments through its automatic electronic payment processing system"). GoodLeap acting in its own interest to enforce a contract pursuant to its terms is not improper, and there are no allegations that GoodLeap did so knowingly to injure Plaintiff. *See Lake v. Valais Ventures, LLC*, No. 3:21-CV-601-SI, 2025 WL 384297, at *6 (D. Or. Feb. 4, 2025) ("A defendant acting in 'pursuit of its own business purposes as it saw them' does not have an improper motive." (quoting *Top Service Body Shop*, 582 P.2d at 1372)); *accord Bell v. Oakland Cmty. Pools Project, Inc.*, No. 19-CV-01308-JST, 2020 WL 13695114, at *2 (N.D. Cal. Oct. 14, 2020) ("A motive is not improper simply because it is pecuniary."); *Kazia Digo, Inc. v. Smart Circle Int'l, LLC*, No. C11-0544RSL, 2012 WL 4511375, at *3 (W.D. Wash. Sept. 28, 2012) ("Simply pursuing one's own pecuniary interests in good faith is not an improper motive.").

Because Plaintiff fails to plead the "wrongful" element of her Financial Abuse claim against GoodLeap, her claim should be dismissed.

**b. Plaintiff Fails to Allege Either a "Taking" or an "Appropriation" by GoodLeap.**

Though Plaintiff generically repeats the statutory elements of Defendants' "wrongful taking or appropriation of Plaintiff's money or property" (FAC ¶ 19), as alleged against GoodLeap her claim is based on GoodLeap's acceptance and "taking" of payments under the PPA (FAC ¶ 18). *See Schmidt*, 401 P.3d at 270 n.2 (acknowledging that when the allegations clearly intend a "taking" the courts limit their analysis accordingly). Although the statute does not define "take," Oregon courts hold that "take" means "'to transfer into one's own keeping [or to] to enter into or arrange for possession, ownership, or use of.'" *Church v. Woods*, 77 P.3d at 1153. But not all transactions and contracts with the elderly constitute a "taking." In the elder abuse context, the word "take" implies a lack of voluntary consent by the owner of the property. *State v. Bevil*, 376 P.3d 294, 301 (Or. Ct. App. 2016) (holding that a person does not "take" property under an elder abuse criminal statute when the property is given with the voluntary consent of the owner, and acknowledging that "the legislature was sensitive to the ability of competent persons to 'consent' to spending their money as they choose"); *Neel v. Lee*, 504 P.3d 26, 33 (Or. Ct. App. 2021) (adopting this definition for civil claims pursuant to ORS 124.100, et seq.). Collection of a contractual payment is not a taking under ORS 124.100(1)(a). *Fenimore v. Specialized Loan Servicing, LLC*, No. 6:21-cv-01538-AA, 2026 WL 821112, at *6 (D. Or. Mar. 25, 2026).

As set forth above, Plaintiff voluntarily paid GoodLeap for solar power pursuant to the PPA. FAC ¶ 14 (alleging damages "in the form of payments she made to GoodLeap on the contract"). GoodLeap's mere receipt of those voluntary payments with Plaintiff's consent is not a taking or appropriation under ORS 124.100. There are also no allegations that GoodLeap set up the account or payments; Plaintiff alleges that was done by an unidentified "person" or "persons."

FAC ¶¶ 8, 10.[4] Accordingly, Plaintiff's Financial Abuse claim additionally fails for this independent reason.

### C. Plaintiff's Agency Theory of Liability Against GoodLeap Also Fails.

Having not alleged any wrongful conduct directly attributable to GoodLeap, Plaintiff alternatively seeks to hold GoodLeap vicariously liable under an agency theory. FAC ¶ 1. Vicarious liability is an exception to the general rule against holding one liable for the alleged wrongs of another and should be applied sparingly. *Brizendine v. Visador Co.*, 437 F.2d 822, 827 (9th Cir. 1970) ("[U]nder Oregon law, a defendant cannot, except under circumstances not here present, be held liable for the conduct of another tortfeasor."); *Standard Acc. Ins. Co. of Detroit, Mich. v. Winget*, 197 F.2d 97, 107 (9th Cir. 1952) ("And, while vicarious liability exists in our law, it is the exception rather than the rule.").

Under Oregon law, there are "two requirements for the existence of an agency relationship: '(1) manifestation by the principal to the agent that the agent may act on his account, and consent by the agent to so act; and (2) the agent must be subject to the principal's control.'" *Bull Mountain Meadows, LLC v. Frontier Commc'ns Nw., Inc.*, 386 P.3d 178, 180 (Or. Ct. App. 2016) (citing *Vaughn v. First Transit, Inc.*, 206 P.3d 181, 186 (Or. 2009)). "The principal's consent to an agency relationship may be shown by an express agreement or it may be implied from the circumstances and from conduct of the parties." *Id.* at 180 (citing *Eads v. Borman*, 277 P.3d 503, 508 (Or. 2012) (en banc)). But "[i]n all cases . . . , both the principal's consent to the agency and the principal's right to control the agent are essential elements of the relationship." *Larrison v. Moving Floors, Inc.*, 873 P.2d 1092, 1094 (Or. Ct. App. 1994).

---

[4] Plaintiff's allegation that lumps all "Defendants" together (FAC ¶ 10) is improper because it fails to allege which defendant is alleged to have engaged in which conduct to support her claim. *See, e.g.*, *Wolfe v. City of Portland*, 566 F. Supp. 3d 1069, 1089 n. 12 (D. Or. Oct. 8, 2021); *A.B. v. Hilton Worldwide Holdings Inc.*, 484 F. Supp. 3d 921, 943 (D. Or. Sept. 8, 2020) (referring to this an impermissible "shotgun" pleading).

Where an agency relationship is asserted based on apparent authority, such authority "can be created only by some conduct of the principal which, when reasonably interpreted, causes a third party to believe that the principal consents to have the apparent agent act for him on that matter." *Eads*, 277 P.3d at 736 (quotations and citations omitted). "[A]n agent's actions, standing alone and without some action by the principal, will not give rise to apparent authority." *Id*. at 737 (citing *Taylor v. Ramsay-Greding Construction Co.*, 196 P.3d 532, 536 (Or. 2008)).

To plead the existence of an agency relationship, a plaintiff must allege underlying facts to support that an agency relationship exists. *Unigestion Holdings, S.A. v. UPM Technology, Inc.*, 444 F. Supp. 3d 1240, 1247–48 (D. Or. Mar. 17, 2020). "Plaintiff cannot rely on legal conclusions of agency that are cast as factual matters." *Miler v. TD Bank USA, Nat'l Ass'n*, No. 3:20-CV-00340-IM, 2022 WL 462119, at *5 n.9 (D. Or. Feb. 15, 2022) (citing *Lennard v. Yeung*, No. CV 10–09322 MMM (AGRx), 2012 WL 13006214, at *15 (C.D. Cal. Feb. 23, 2012)).

Courts within the Ninth Circuit repeatedly dismiss agency allegations at the pleading stage when they do no more than recite the legal elements of agency without supporting facts for each required element. *Williams v. Yamaha Motor Co. Ltd.*, 851 F.3d 1015, 1024-25 at n. 5 (9th Cir. 2017) (allegations that "Defendants . . . were the agents or employees of each other and were acting at all times within the course and scope of such agency and employment . . . and are legally responsible because of their relationship with their co-Defendants" was "a conclusory legal statement unsupported by any factual assertion"); *Usanovic v. Americana, L.L.C.*, 775 F.3d 1133, 1140 (D. Nev. Mar. 31, 2025) (finding conclusory allegations of actual and apparent authority insufficient to survive motion to dismiss); *Winters v. Grand Caribbean Cruises Inc.*, No. CV-20-00168-PHX-DWL, 2021 WL 511217, at *6 (D. Ariz. Feb. 11, 2021) (collecting cases dismissing TCPA claims based on inadequate agency allegations); *Hernandez v. Jefferson Cty. Sheriff's Office*, No. 3:19-cv-1404-JR, 2020 WL 7766987, at *3 (D. Or. Oct. 9, 2020) (vague factual allegations

coupled with legal conclusions of agency insufficient); *Schaffer Family Investors, LLC v. Sonnier*, 120 F. Supp. 3d 1028, 1047 (C.D. Cal. Aug. 13, 2015) (allegation that the parties "entered into a verbal agency agreement for [defendant] to serve as [Plaintiffs'] agent" were conclusory and insufficient to survive motion to dismiss); *Larson v. Liberty Mut. Fire Ins. Co.*, No. 11-00272 SOM/BMK, 2012 WL 93181, at *6 (D. Haw. Jan. 10, 2012) (allegations that principal gave agent actual and apparent authority, both the principal and agent consented to the arrangements, and alleged wrongful acts were done under the control and direction of the principal were mere "recitals of the elements of an agency relationship, not factual allegations"); *In re Fresh Process Potatoes Antitrust Litig.*, 834 F. Supp. 2d 1141, 1167–68 (D. Idaho Dec. 2, 2011) (coupling significant factual allegations regarding the unity of interest and common financial pursuit between a licensor and licensee with legal conclusions of an agency relationship are insufficient).

Where agency is pleaded in support of a fraud claim, the standard is even more demanding. Under Fed. R. Civ. P. Rule 9(b), a plaintiff must allege with particularity how the agent and principal were involved in the fraud and must at a minimum identify the role of each defendant in the alleged fraudulent scheme. *Swartz v. KPMG LLP*, 476 F.3d at 764; *see also Jackson*, 931 F. Supp. 2d at 1061–62; *Barba v. Seung Heun Lee*, No. 09-1115-PHX-SRB, 2010 WL 11515658, at *9 (D. Ariz. Aug. 25, 2010) ("Plaintiffs' conclusory allegations of agency relationships between the corporate Defendants and their unidentified agents are not sufficient to meet the particularity requirements of Rule 9(b) for Plaintiffs' fraud based claims.").

Here, Plaintiff alleges zero facts to establish a purported agency relationship between GoodLeap and any alleged bad actor as required by Rule 8, let alone under Rule 9(b)'s heightened standard. Instead, Plaintiff parrots the legal requirements of an agency relationship and repeats throughout the FAC that Freedom Forever's employee-salesperson and other unidentified "persons" were acting as GoodLeap's agent. But she does not allege facts supporting the

manifestation of assent between GoodLeap and any purported agent, or any facts about GoodLeap's control over such agents.

Plaintiff first alleges that GoodLeap "authorized Freedom to act as its sales agent by agreement, or led Ms. Zarate to reasonably believe that Freedom was authorized to act as GoodLeap's agent by allowing it to sell on its behalf." FAC ¶ 6. But this is a bare legal conclusion unsupported by any facts. An agency relationship can be express by agreement or apparent by the principal's conduct. Plaintiff casting those conclusory legal requirements as factual matters is insufficient to plausibly state an agency relationship.

Plaintiff then simply repeats throughout the FAC that Freedom Forever was acting as GoodLeap's agent, or unidentified persons were acting as agents of "Defendants." FAC ¶ 1 (Freedom Forever was acting "within the scope of actual or apparent authority granted to it by Defendant GoodLeap, LLC"); FAC ¶ 8 ("a person acting within the scope of their actual or apparent authority as an agent of Defendants"); FAC ¶ 9 (Freedom Forever and its sales person "were acting within the scope of their actual or apparent authority on behalf of GoodLeap"); FAC ¶ 10 (Freedom Forever's salesperson and other persons who set up the account "were acting as agents with actual or apparent authority for the Defendants"). These, too, are bare legal conclusions. Repeating them does not cure the insufficiency of allegations to establish an agency relationship in the first instance.

The fact that Plaintiff does not even choose between the two agency theories further underscores the deficiency of her allegations. This is particularly so because apparent authority requires specific conduct or actions by GoodLeap and Plaintiff alleges no communication or interaction with GoodLeap at all to conceivably support such a theory. Further underscoring the deficiency of Plaintiff's allegations is her failure to identify who the "person" or "persons" were who purportedly signed the PPA on her behalf, what their relationship was with GoodLeap or

Freedom Forever, or how they committed the alleged fraud and forgery. She instead simply concludes they were the agents of "Defendants." *E.g.*, FAC ¶ 10.

At bottom, a third party selling a product or service of another does not in itself establish an agency relationship. *Cf. Murphy v. DirecTV, Inc.*, 724 F.3d 1218, 1233 (9th Cir. 2013) ("Thus, the supplier-retailer relationship is insufficient to render Best Buy DirecTV's agent."); *In re Cattell*, No. 19-33823-DWH13, 2020 WL 3053130, at *3 (Bankr. D. Or. June 8, 2020) ("Indeed, as recently as 2016 (ten years after the publication of the Restatement), the Oregon Supreme Court restated the conventional rule that 'an agent's actions, standing alone, will not give rise to apparent authority.'" (quoting *Harkness v. Platten*, 375 P.3d 521, 526 (Or. 2016))). But that is the only fact that Plaintiff alleges with respect to GoodLeap's relationship with Freedom Forever. And she alleges no facts regarding the nature of GoodLeap's relationship with the unidentified "person" or "persons" who allegedly signed the PPA on her behalf. Without more, both of her claims alleged against GoodLeap on an agency theory should be dismissed.

## V. CONCLUSION

For the foregoing reasons, GoodLeap respectfully requests that the Court grant the Motion and dismiss the FAC. Plaintiff has already been informed of these deficiencies and still failed to cure them. Nor can she. She never even interacted with GoodLeap and there are no facts establishing its liability for the claims alleged. Accordingly, GoodLeap respectfully requests that dismissal be granted with prejudice. *See Beverly v. Cty. of Orange*, No. 22-55080, 2022 WL 14003695, at *1 (9th Cir. Oct. 24, 2022) (affirming dismissal of first amended complaint with

prejudice where the district court properly accounted for plaintiff's pro se status, once gave her leave to amend, and she still failed to cure deficiencies).

Dated: July 27, 2026

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

/s/ Brandon Wong

Brandon Wong (admitted *pro hac vice*)
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Telephone: (714) 371-2500
Facsimile: (714) 371-2550
bwong@manatt.com

TONKON TORP LLP

Jeffrey G. Bradford (OSB No. 133080)
1300 SW Fifth Ave., Suite 2400
Telephone: (503) 802-5724
Facsimile: (503) 274-8779
jeff.bradford@tonkon.com

*Attorneys for Defendant GoodLeap, LLC*

**CERTIFICATE OF COMPLIANCE**

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 6,388 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

**CERTIFICATE OF SERVICE**

I hereby certify that on the date given below, I electronically filed the foregoing MOTION TO DISMISS THE FIRST AMENDED COMPLAINT with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following persons:

Hope Del Carlo, Esq. (hope@elemental.law)

DATED this 27th day of July, 2026, at Placentia, California.

/s/ Brandon Wong
Brandon Wong