Hope Del Carlo, OSB No. 002410
Elemental Law LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
hope@elemental.law
Tel: 503-789-7372
Fax: 503-345-6655

Attorney for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF OREGON**

**PORTLAND DIVISION**

| | |
|---|---|
| **MARIA ZARATE,**<br><br>Plaintiff,<br><br>v.<br><br>**FREEDOM FOREVER OREGON, LLC, and GOODLEAP, LLC,**<br><br>Defendants. | Case No.: 3:26-CV-00678-SB<br><br>**PLAINTIFF'S OPPOSITION TO GOODLEAP, LLC'S, FRCP 12 MOTION**<br><br>Oral Argument Requested |

## I. INTRODUCTION

Plaintiff Maria Zarate ("Ms. Zarate" and "Plaintiff") hereby responds to Defendant GoodLeap, LLC's ("GoodLeap") Motion to Dismiss under Fed. R. Civ. P. 12(b)(6)("MTD"), filed July 27, 2026 [Dkt. 17]. This Response is supported by Plaintiff's First Amended Complaint ("FAC") [Dkt. 15] , the Declaration of Brandon Wong ("Wong Dec.") [Dkt. 18], and its Exhibit [Dkt. 18-1]. Plaintiff requests that the Court deny GoodLeap's Motion entirely. Alternatively, if the Court finds that there are deficiencies in Ms. Zarate's pleading, she requests leave to file a

Second Amended Complaint to cure any shortcomings.[1] Plaintiff requests oral argument on the Motion to Dismiss.

Maria Zarate has almost no information about the business processes that created the debt that GoodLeap now claims she owes it. Here is what she does know: a young man who called himself Alex Mendoza came to her home in Independence, Oregon, in the spring of 2025. He spoke her mother tongue, Spanish. She invited him to come into her house when he knocked on her door. He brought her pastries, talked with her, and won her trust. Now she knows, unfortunately, that he was lying to her—perhaps even about his name. The lies he told her, and the information he hid from her, now benefit Defendant GoodLeap.

The problems that can arise from the door-to-door sale of residential solar sales are familiar to consumer protection regulators. In August 2024, the federal Consumer Financial Protection Bureau ("CFPB") released a paper on the residential solar panel financing market called, "Solar Financing Market: Issue Spotlight."[2] At that time, the "market for residential solar panels continue[d] to grow," a fact the CFPB attributed to "declining solar panel costs and increased government incentives, including tax credits." Along with the growth, "marketing and door-to-door sales of solar-related financial products have become more prevalent." *Id.,* p. *2.*

The CFPB cautioned about the "risks stemming from the presentation and structure of 'solar-specific' loans, which are often facilitated by large financial technology ('fintech') firms via a point-of-sale partnership with solar installers." Those risks include "misleading statements and marketing materials." It is exactly this type of point-of-sale partnership between lender-

---

[1] Plaintiff filed her First Amended Complaint as of right under FRCP 15(a)(1)(B), after GoodLeap filed its initial motion to dismiss. This Opposition is Ms. Zarate's first request to the Court for leave to amend.

[2] Available at https://files.consumerfinance.gov/f/documents/cfpb_solar-financing-issue-spotlight_2024-08.pdf



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

Defendant GoodLeap and seller-Defendant Freedom Forever Oregon, LLC[3], that created the environment in which Ms. Zarate's problems began.

This case is not a dispute between two sophisticated business entities. It is between a large, multistate solar finance company and an 80-year-old woman who was solicited at her home by someone that GoodLeap's own Power Purchase Agreement ("PPA") identifies as its "salesperson." That person was not "Alex Mendoza," as he called himself to Ms. Zarate, but Gerardo Torres ("Torres/Mendoza"). This salesperson told Ms. Zarate that solar power would cost her nothing; she only had to give verbal permission for the panels to be installed. Ms. Zarate did not sign any documents with GoodLeap. Instead, Torres/Mendoza, or another party authorized by Freedom or GoodLeap , created an email account that was not hers, and used it to execute documents and establish payment arrangements. Torres/Mendoza asked for Ms. Zarate's cellular phone while they were interacting. Although Ms. Zarate cannot say with certainty whether Torres/Mendoza was then creating an email account, after this interaction, an email account apparently existed, and that email account was used to electronically sign the PPA for Ms. Zarate. Given that Ms. Zarate did not create, nor have access to this email account, she is entitled to an inference that the signature on the PPA was created by GoodLeap or its agents, since no one else but Torres/Mendoza had access to her phone or motivation to sign a PPA.

Based on that fraudulent digital signature, GoodLeap began billing and collecting money from Ms. Zarate under the resulting 25-year PPA. FAC ¶¶ 1, 6–10, 13–18. Even after she notified GoodLeap of the fraud, and continuing after this action was filed, GoodLeap is still requesting and accepting payments from Ms. Zarate. Although she contests the legitimacy of the

---

[3] Freedom Forever Oregon, LLC, has been served, but has not yet appeared in this action. Its parent company is in bankruptcy: In re Freedom Forever, LLC, Bank. Del. Case 1:26-bk-10522.



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

debt, she is afraid to stop paying due to the risk of incurring negative credit reporting, a lawsuit, and the possibility of a judgment lien that could result in her losing the home that she owns outright.

Contrary to GoodLeap's argument, the FAC does state valid claims under Oregon's Unlawful Trade Practices Act ("UTPA") and Oregon's financial abuse of vulnerable persons statute. To the extent that some details are not yet pleaded, the contract document provides support for Ms. Zarate's allegations and future clarifying amendments. The PPA that GoodLeap supplied as an exhibit to Brandon Wong's Declaration identifies GoodLeap as the "Provider," Freedom Forever ("Freedom") as the "Installer," and Torres as the "Salesperson/Contractor." *Wong Dec.*, Ex. A, p. A-2. The PPA requires that Ms. Zarate enroll in automatic withdrawals from a checking account as a condition to executing the PPA. It conditions GoodLeap's obligations on work to be performed by Freedom, and holds that work to GoodLeap's reasonable standards. The PPA permits GoodLeap to decline to purchase the system if installation is not to its satisfaction, and it authorizes GoodLeap to process recurring payments. *Id.* at A-5, A-10, A-24–A-27.

GoodLeap's Motion asks the Court to treat the disputed PPA as conclusive proof that Zarate agreed to its terms and voluntarily paid. But treating the PPA this way would be at odds with Ninth Circuits limitations on the incorporation-by-reference doctrine, as explained in detail below. *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 998–1003 (9th Cir. 2018).

Dismissal with prejudice of the FAC should not be granted, based on the facts as they are currently known. If the Court finds that more specific allegations are needed to put GoodLeap on notice of Ms. Zarate's contention that Goodleap had the requisite level of control and knowledge of the salesperson's actions, or that it ratified their actions and the fraudulently-signed PPA, Ms.



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

Zarate requests leave to file a Second Amended Complaint. She proposes curative allegations below that would distinguish GoodLeap's conduct from Freedom Forever's and Torres/Mendoza's, clarify the fraud-related allegations (to the extent possible before discovery, considering the information asymmetry between the parties) and expressly allege GoodLeap's liability under Oregon's vulnerable person statute for permitting financial abuse of an elderly person.

## II. RELEVANT ALLEGATIONS

Ms. Zarate's FAC alleges that Torres/Mendoza visited her home in spring 2025 and represented in English and Spanish that installation would save money and cost nothing. FAC ¶ 6. Zarate is 80, lives alone, has no computer, does not use email or text messages, and did not sign transaction documents or receive GoodLeap emails. FAC ¶ 7. She consented only to installation of the solar panels during a phone call and was not told that she would have to pay for anything. *Id.*

The FAC further alleges that an unauthorized person created an email account in Ms. Zarate's name, created and signed documents purporting to bind her to a GoodLeap PPA, and established payment arrangements. FAC ¶¶ 8, 10. Freedom installed the system. FAC ¶ 9. GoodLeap then billed Ms. Zarate; the alleged PPA requires monthly payments for 25 years, and payments were withdrawn from Ms. Zarate's checking account. FAC ¶¶ 9–10, 14, 18.

The alleged PPA identifies GoodLeap as the provider and purchaser of the system, Freedom Forever as the installer, and Gerardo Torres as the salesperson/contractor representative. *Wong Dec.*, Ex. A, [Dkt. 18-1 at A-2–A-4]. It requires ACH Autopay enrollment to sign, permits GoodLeap to debit the payment account and retry unsuccessful automated



ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

payments, and conditions GoodLeap's purchase of the system on installation of the solar power generation system to GoodLeap's satisfaction. *Id*. at A-5, A-10, A-24–A-27.

## III. LEGAL STANDARDS

**Legal Standard—Motions to Dismiss Under FRCP 12(b)(6).**

The pleading standards created by FRCP 8(a)(2) require the plaintiff to set out a "short and plain statement of the claim showing that the pleader is entitled to relief." The complaint must give the defendant "fair notice" of the claim and allege factual support to demonstrate the plausibility of the claims for relief, but does not need to contain detailed and specific factual allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The Supreme Court's defining cases that require "plausibility" in pleading are *Twombly* and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). As clarified by the Ninth Circuit, "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epsten Grinnell & Howell,* 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks and internal citations omitted).

Motions to dismiss for failure to state a claim are viewed with disfavor. *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). In assessing a motion to dismiss under FRCP 12(b)(6), the court assumes that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *See Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987). Even if the pleading itself suggests that the chance of recovery is slim, the district court must allow the plaintiff to develop the case at this early stage of the proceedings. *See United States v. City of Redwood City*, 640 F.2d 963, 966 (9th Cir. 1981).

Allegations based on fraud must identify the circumstances of the fraud with sufficient particularity to give notice of the misconduct alleged. The speaker's intent and knowledge,


**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

however, may be alleged generally. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–06 (9th Cir. 2003).

### 1. The Court May Consider the PPA but Should Not Assume that it Was Validly Signed by Ms. Zarate.

GoodLeap has offered the fraudulently-procured PPA at issue in this case, arguing that it is incorporated by reference to Ms. Zarate's FAC and that the Court should "rely on it and assume that the entire PPA is true" for this Motion. This would not comport with the law.

GoodLeap invites the Court to fall into the error of finding that the PPA establishes that Ms. Zarate agreed to the PPA and has been making voluntary payments on it. But the FAC alleges exactly the opposite: Ms. Zarate maintains that she did not sign or authorize the PPA, that an unauthorized person created the email account used for the transaction, and that her electronic signature was forged. FAC ¶¶ 7–10. The authenticity of the copy and the truth of assertions within the PPA are thus disputed; it is Ms. Zarate's version of the facts that are taken as true for the purposes of FRCP 12. *Usher*, at 561.

District courts may not generally consider documents outside the complaint when assessing the sufficiency of pleading under FRCP 12(b)(6). *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001). Normally, considering extraneous matters on an FRCP 12(b)(6) motion converts it into a motion for summary judgment under Rule 56. *See* FRCP 12(d). If that happens, both parties must have the opportunity to "present all the material that is pertinent to the motion." FRCP 12(d). Discovery would need to be permitted for this process to be fair.

There are exceptions to the "no extraneous materials" rule. The first is the common law incorporation-by-reference doctrine, and the second is the court's ability to take judicial notice of certain facts under Federal Rule of Evidence 201. Although these rules allow district courts to



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

consider materials outside a complaint, each does so "for different reasons and in different ways." *Khoja v. Orexigen Therapeutics, Inc*., 899 F.3d 988, 998 (9th Cir. 2018).[4]

The Ninth Circuit has previously seen defendants in certain types of cases "exploiting [incorporation-by-reference and judicial notice] improperly to defeat what would otherwise constitute adequately stated claims at the pleading stage." *Id.* The Court is at risk of GoodLeap convincing it to do that here, where, as in securities fraud cases,

> "[D]efendants possess materials to which the plaintiffs do not yet have access. . . . which is 'particularly troubling in the common situation of asymmetry, where a defendant starts off with sole possession of the information about the alleged wrongdoing' . . . If defendants are permitted to present their own version of the facts at the pleading stage — and district courts accept those facts as uncontroverted and true — it becomes near impossible for even the most aggrieved plaintiff to demonstrate a sufficiently 'plausible' claim for relief" (internal cites omitted). *Id.*, at 988-989.

So, though a solar power purchase contract is referred to in the FAC, the Ninth Circuit makes it clear that the mere mention of an extraneous document in a pleading is not, by itself, enough to incorporate and draw merits conclusions from the contents of the document by reference into the complaint. It would be inappropriate for the Court to consider the PPA to be proof that Ms. Zarate consented to the PPA, under the doctrine of incorporation-by-reference, as not all of the elements for the doctrine are met here. As the Ninth Circuit stated in *U.S. v. Ritchie*, "the mere mention of the existence of a document is insufficient to incorporate the contents of the document by reference." *U.S. v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (citations omitted). Critically, incorporation-by-reference is appropriate only where no party questions the authenticity of the document(s) in question. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994); *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006).

[4] GoodLeap's FRCP 12 Motion does not ask the Court to take judicial notice of the PPA; therefore, only the incorporation-by-reference doctrine is addressed here.



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

Here, Ms. Zarate *does* dispute the authenticity of the PPA. The entire point of the claims she pleads in her FAC is that she did not sign it, was not told what it said, and did not agree to its terms. Her FAC reiterates several times that she "never saw or signed any paperwork related to the transaction," that "someone had created an email account. . . and used it to sign her name to a contract with Defendant GoodLeap," FAC, ¶ 1, that "she did not sign any documents . . . related to any transactions with GoodLeap," *Id.,* ¶ 7, and that, somehow, a "person created and signed documents purporting to obligate Ms. Zarate" to a contract with GoodLeap. *Id.,* ¶ 8.

When a complaint contains allegations such as these, the documents that are alleged to be inauthentic are not properly considered as true, and therefore, should not be considered incorporated by reference to the complaint on a motion to dismiss. *Ghlachi v. U.S. Bank, N.A.*, No. CV 14-6619 PSG (CWx), 2015 U.S. Dist. LEXIS 191828, at *11-12 (C.D. Cal. Apr. 29, 2015)(declining to consider extraneous documents on an FRCP 12 motion where the plaintiff disputed their authenticity based on an inauthentic signature and inclusion of a disputed "email address that Plaintiff did not know of or provide.")

Thus, the Court may consider the PPA as a basis for Ms. Zarate's current (or future, amended) allegations of GoodLeap's asserted role in the transaction, but it cannot use the PPA to conclude as a matter of law that Zarate agreed to a purchase she alleges was created through fraud.

Ms. Zarate agrees that certain facts stated in the PPA are helpful for resolving this Motion, and she has no objection to the Court's consideration of the PPA's statements, to the extent that they do not contradict the allegations of the FAC:

1. That GoodLeap has possession of a Power Purchase Agreement between itself and, purportedly, the Plaintiff.



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

2. That the Salesperson for the PPA was Gerardo Torres, and the Contractor was Freedom Forever LLC and its affiliates.

3. That the email address associated with the consumer (said to be Maria Zarate, as disputed in the FAC) is Mz6860332@gmail.com.

4. That the consumer is "required to enroll in ACH Autopay in order to sign the Agreement."

These facts are helpful for establishing the basis for Ms. Zarate's well-pleaded allegations, and to the extent it becomes necessary, additional facts she can allege in an amended pleading to clarify or refine the contours of her claims, should the Court grant GoodLeap's MTD but allow Ms. Zarate to amend.

**2. The FAC Plausibly Alleges Violations of the Oregon Unlawful Trade Practices Act, and the PPA Illustrates her Allegations about GoodLeap's Role.**

The UTPA prohibits, among other things, misrepresenting the characteristics, benefits, price reductions, the nature of an obligation, and the offering price for or cost of goods or services. ORS 646.608(1)(e), (j), (k), (s). The FAC identifies the salesperson who spoke the words that violated this provision (Torres/Mendoza), the person who heard them (Ms. Zarate), the location (her home), the approximate period (spring 2025), and the particular false representation: that the solar panels and electricity would cost nothing. FAC ¶¶ 1, 6–9, 13. It also identifies the resulting alleged debt: monthly GoodLeap charges, ACH withdrawals from Ms. Zarate's account, and a 25-year PPA that GoodLeap is enforcing. FAC ¶¶ 9–10, 14.

The FAC supplies the who, what, when, where, and how of the misrepresentation and resulting violation of the UTPA. That is sufficient, specific notice under Rule 9(b). *Vess*, 317 F.3d at 1106.



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

The FAC's allegations also plausibly connect the representations made by Torres/Mendoza to GoodLeap. Further, GoodLeap's PPA identifies Torres as the transaction's salesperson and Freedom as the installer, with GoodLeap identified as the provider and buyer of the solar power system. It allows GoodLeap to approve the installer's work. Finally, the PPA gives GoodLeap the right to initiate and administer the payments it collected (and continues to collect). FAC ¶¶ 6, 8–10; *Wong Dec*., Ex. A [ECF 18-1 at A-2–A-5, A-10, A-24–A-27].

Those facts permit a plausible inference that the alleged misrepresentations occurred in the sale of GoodLeap's product, by a salesperson who GoodLeap knew about and approved of, and that GoodLeap was not just the assignee, but was an original party to the transaction. They also permit an inference that a person authorized by GoodLeap created the email account by which the PPA was signed. They show that GoodLeap consented to this arrangement, had control over it, and continues to stand by it as an enforceable contract.

GoodLeap's determination to keep enforcing the PPA is an allegation Ms. Zarate can make to assert that GoodLeap has ratified its salesperson's fraud. Ratification is accomplished either by express approal (the principal intends to ratify the agent's act, with knowledge of the material facts), or by implied ratification (the principal, with knowledge of the facts, accepts the benefits it obtained from the agent's unauthorized act and fails to repudiate it). *Alldrin v. Lucas,* 260 Or. 373, 381, 490 P.2d. 141 (1971). "If a third person, who has had dealings with a purported agent, reports these to the purported principal under circumstances which reasonably justify an inference of consent unless the principal discloses his dissent, the failure of the principal to dissent within a reasonable time is, unless explained sufficient evidence of affirmance." *Kneeland v. Shroyer*, 214 Or. 67, 94 (Or. 1958).



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

Ms. Zarate can allege facts sufficient to support GoodLeap's ratification of the conduct of Torres/Mendoza, Freedom, or whoever fraudulently signed the PPA. After she started receiving bills from GoodLeap, Ms. Zarate's family members called GoodLeap and notified it that she did not create or use the email account, did not sign the PPA or ACH authorization, and that she disputed the charges as the product of deception and forgery. Even after receiving notice, GoodLeap continued taking ACH debits, retained Ms. Zarate's payments, and did not suspend collection, investigate or correct the problem, thereby accepting the benefits of the transaction and the bad acts of the actors who initially solicited Ms. Zarate. GoodLeap has still not not backed down from the enforceability of this contract.

Agency and ratification may be inferred from these facts. Whether the evidence ultimately establishes actual authority by Torres/Mendoza, apparent authority, direct participation, or ratification, the lack of commitment to a specific agency theory is not a basis on which to dismiss the UTPA claim now. If necessary, Ms. Zarate can amend to add details about GoodLeap's participation in the PPA, and the inferences it creates regarding Torres/Mendoza's and Freedom's agency for GoodLeap as part of a Second Amended Complaint.

**3. The FAC States a Financial Abuse of a Vulnerable Person Claim and Identifies GoodLeap's Alleged Receipt and Collection of Ms. Zarate's money.**

Since Ms. Zarate is 80 years old, she is an "elderly person" and therefore a "vulnerable person" under Oregon law. ORS 124.100(1)(a), (e). The statute authorizes a claim for damages when a person wrongfully takes or appropriates a vulnerable person's money or property. But it also separately permits liability *for a person who knowingly causes or permits another's financial abuse.* ORS 124.100(2), (5); ORS 124.110(1)(a).



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

The elements of a wrongful taking claim under Oregon's financial abuse law are a taking or appropriation of money or property belonging to an elderly or incapacitated person, and wrongfulness. *Church v. Woods*, 190 Or. App. 112, 117–19, 77 P.3d 1150 (2003). Deceit and misrepresentation are recognized as "wrongful" for the purposes of the Act. *Id.* at 119.

The FAC alleges that GoodLeap collected money through its bills and automatic electronic payment process under a contract Ms. Zarate never authorized, and that the payment arrangement and PPA were created through misrepresentation and forgery. It alleges that GoodLeap claims a continuing entitlement to her money. FAC ¶¶ 8–10, 14, 18. These are not allegations that Ms. Zarate made an informed, voluntary transfer of contract rights and payments. They allege the opposite, and together, these allegations constitute a "wrongful taking" by GoodLeap.

GoodLeap's argument that Ms. Zarate is voluntarily paying on a valid contract asks the Court to disregard the allegations of her lawsuit entirely—that she did not consent to the PPA, and did not know that GoodLeap would put her at risk of losing her home if she did not pay. The ultimate factual questions raised by the FAC cannot be resolved until the record has been developed through discovery, after which a factfinder can evaluate the evidence.

The PPA also makes it clearer that GoodLeap is the party behind the attempt to continue enforcing an illegally procured contract in order to collect money from Ms. Zarate. It requires ACH enrollment as a condition to sign the PPA and specifies that GoodLeap may debit the designated account. It permits GoodLeap to try again to collect unsuccessful ACH payments, it and makes the consumer's payment obligation unconditional. Wong Dec., Ex. A [Dkt. 18-1 at A-5, A-9, A-24–A-25]. Ms. Zarate is alleging not just that GoodLeap passively received money in an ordinary contract transaction; the arrangement becomes a "wrongful taking" when GoodLeap



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

uses its payment machinery created through an unauthorized transaction to collect from an elderly person, and continues doing so, even after notice that the PPA was not signed by her.

**4. The Agency Allegations Are Sufficiently Plausible; Alternatively, Ms. Zarate Should Be Granted Leave to Amend.**

Under Oregon law, actual agency may be shown by express or implied consent for the agent to act on the principal's behalf, coupled with the principal's right to control the agent. *Eads v. Borman*, 351 Or. 729, 735–39, 277 P.3d 503 (2012). Apparent authority can be shown when a third party reasonably believes, due to the principal's manifestations, that a person was authorized to act on the principal's behalf. *Id*. at 736–37, citing *Taylor v. Ramsay-Gerding Construction Co.*, 345 Or. 403, 410, 196 P.3d 532 (2008).

The FAC does not just stick the "agent" label on Freedom and Torres/Mendoza. It alleges that Freedom and Torres/Mendoza solicited and sold GoodLeap's solar power to Ms. Zarate, and that Torres/Mendoza is the person identified in the PPA as salesperson. Further, in line with the FAC, the PPA shows that GoodLeap is the provider and purchaser of the installed system, that GoodLeap retained approval rights over installation and designated service-provider work, and that GoodLeap collected payments arising from the sale. FAC ¶¶ 6, 8–10; *Wong Dec.*, Ex. A, [Dkt. 18-1 at A-2–A-5, A-10, A-26–A-27]. Taken together, and viewed in Plaintiff's favor, these facts support a reasonable inference that Torres/Mendoza and Freedom were authorized to market and originate GoodLeap's PPA to Ms. Zarate.

GoodLeap correctly notes that proving Ms. Zarate's claim will ultimately require evidence of the scope of its relationship with Freedom and Torres/Mendoza. There is no way for her to gain access to that information before discovery. But, as it stands, the FAC, supported by undisputed facts drawn from the PPA and the alleged collection activity against Ms. Zarate by



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

GoodLeap, identifies the roles of each of the actors, including GoodLeap, and provides a plausible basis for beginning to take the necessary discovery.

Ms. Zarate does not ask the Court to infer that GoodLeap is responsible for Freedom's and Torres/Mendoza's actions merely because they sold GoodLeap's product. Rather, Ms. Zarate alleges that GoodLeap's own PPA shows that Torres/Mendoza, Freedom, and GoodLeap were parties to a structured, integrated sales-installation-provider arrangement. Despite that arrangement, GoodLeap now disclaims responsibility for what happened at the point of sale. But GoodLeap used, and continues to use, the resulting "sale" as a justification for taking money from, and potentially filing collection activity against, Ms. Zarate.

By enforcing a contract made by fraud, Ms. Zarate alleges that GoodLeap has obtained property (an intangible contract right, which is property, nonetheless) that gives it the power to sue her and get a judgment lien that could potentially force the sale of her home. This is "wrongful taking."

Under these circumstances and allegations, Ms. Zarate has sufficiently alleged that GoodLeap participated in a "wrongful taking" of money and/or property (contract rights against her) from her. If necessary, she can also allege that GoodLeap "permitted" Torres/Mendoza and/or Freedom to financially abuse her. ORS 124.100(2). In either case, her Financial Abuse of a Vulnerable Person claim should not be dismissed with prejudice. She should be permitted to take discovery to better understand how this happened to her, and to hold GoodLeap responsible, as the party who benefited, and continues benefiting, from Ms. Zarate's loss. If her allegations need to be refined, she requests leave to amend to cure any pleading issues the Court identifies with respect to agency by Torres/Mendoza and Freedom for GoodLeap, or the allegations that describe GoodLeap's wrongful taking.



ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

**5. Dismissal with Prejudice Would be Improper.**

Ms. Zarate believes that her pleading is sufficient to withstand both FRCP 12 and the heightened pleading standards required by FRCP 9(b). However, if the Court concludes that the FAC should plead more facts that support detail as to agency, ratification, or GoodLeap's knowledge, it would be more appropriate to grant dismissal with leave to amend. FRCP 15 directs that leave be freely given when justice so requires. *Foman v. Davis*, 371 U.S. 178, 182 (1962). "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.* at 181-82, 83 S. Ct. 227, 230 (1962), quoting *Conley v. Gibson*, 355 U.S. 41, 48.

It would miscarry justice for a defrauded plaintiff, trapped in a contract made by digital trickery, to be shut out of court because she does not know the details of the relationship between the person who tricked her and the entity who is taking her money. The liberal amendment standard defeats GoodLeap's request for dismissal with prejudice here. The critical relationship documents, email records, onboarding and DocuSign audit records, installation and payment records, communications, and complaint/escalation records are uniquely within GoodLeap's control. After discovery begins, these will provide the precise detail GoodLeap says is absent.

## IV. ALTERNATIVE REQUEST FOR LEAVE TO AMEND AND PROPOSED CURATIVE ALLEGATIONS

If the Court dismisses Ms. Zarate's FAC and re-pleading is allowed, Plaintiff respectfully requests 30 days from entry of the Court's order to file a Second Amended Complaint. She can modify her existing allegations or add the following:



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

1. GoodLeap's PPA identifies GoodLeap as the "Provider," identifies Freedom Forever LLC and its affiliates as the "Installer," and identifies Gerardo Torres as the "Salesperson /Contractor." The PPA states that GoodLeap will purchase the system from the installer following installation and undertake the provider's rights and obligations. It reflects a cohesive, specific, GoodLeap-branded sales, installation, ownership, and payment arrangement for Zarate's solar power.

2. The PPA makes GoodLeap's obligations conditional on the completion, to GoodLeap's reasonable satisfaction, of aspects of the installation of the equipment. GoodLeap may decline to purchase the system if it is not installed to GoodLeap's satisfaction. Therefore, GoodLeap retained the right to approve essential transaction and installation prerequisites before exercising rights under the contract.

3. The PPA requires ACH Autopay enrollment and identifies GoodLeap as the entity authorized to debit the designated payment account, reinitiate unsuccessful automatic payments, and collect. The Second Amended Complaint can identify the date(s) and amount(s) of every GoodLeap charge or ACH debit, or other payment made by Ms. Zarate, including those made after she notified GoodLeap of the fraudulent nature of the PPA.

4. Gerardo Torres, a "salesperson" for GoodLeap's PPA, using the name "Alex Mendoza," solicited Zarate at her Independence home in spring 2025, represented that the panels and solar power would cost her nothing, and obtained her agreement only to installation. Ms. Zarate did not authorize an email account in her name, did not execute a GoodLeap PPA, and did not authorize the alleged electronic signature or payment authorization. The Second Amended Complaint can identify the email address and Docusign audit number from the PPA.



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

5. GoodLeap allowed Freedom and Torres/Mendoza to solicit, originate, submit, and obtain consumer execution of GoodLeap PPAs. GoodLeap supplied or required the use of its PPA, and retained the right to accept or reject the transaction, decline to purchase the system, require changes, and condition its performance on its satisfaction with specified work.

6. Freedom and Torres/Mendoza acted within the scope of that authority by marketing a GoodLeap PPA to Ms. Zarate, obtaining her consent to installation of the solar panels, submitting electronic documents for GoodLeap's approval, and arranging the installation of the system, the completion of which was necessary for GoodLeap's purchase of the system and its ACH payment process.

7. After she started receiving bills from GoodLeap, Ms. Zarate's family members called GoodLeap and notified it that she did not create or use the email account, did not sign the PPA or ACH authorization, and disputed the charges as the product of deception and forgery. Even after receiving that notice, GoodLeap continued ACH debits, retained her payments, did not suspend collection, investigate or correct the problem, thereby accepting the benefits of and ratifying the transaction and the acts of the persons who procured it.

8. GoodLeap knowingly acted or failed to act (and continues to do so) under circumstances in which a reasonable person should have known another was financially abusing a vulnerable person. Zarate was 80 years old when the transaction was initiated and is a vulnerable person under ORS 124.100. GoodLeap knew or should have known that the transaction presented material indicators of financial abuse when Ms. Zarate's family reported to GoodLeap that the transaction was fraudulent.

9. Despite that knowledge and its ability to suspend collection, investigate the electronic signature and ACH-authorization process, preserve records, and stop enforcement, GoodLeap



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

did not intervene, investigate, cancel the contract or stop taking money from Ms. Zarate. By knowingly failing to act under circumstances in which a reasonable person should have known that Torres, Freedom, and/or unknown persons had financially abused Zarate, GoodLeap permitted financial abuse within the meaning of ORS 124.100(5).

10. GoodLeap also wrongfully took or appropriated Zarate's money by failing to cancel the debt, refund payments made, and continuing to demand and accept payments through the present, after it knew or should have known that the PPA and payment authorization were fraudulent. The taking was wrongful because it was accomplished or continued through deceit, misrepresentation, forgery, and/or GoodLeap's knowing acceptance and enforcement of the resulting unauthorized PPA and ACH payment arrangement.

## V. CONCLUSION

Ms. Zarate has filed a lawsuit based on what little she knows about what happened to her. The main obstacle to her ability to plead her claims even more specifically is the opacity of GoodLeap's arrangement with Torres/Mendoza. GoodLeap sends sales agents into Oregon's neighborhoods to sell contracts; they gain people's trust in their living rooms. GoodLeap enforces the PPAs that result from those interactions, even when someone like Maria Zarate says, "I didn't sign that."

GoodLeap's way of doing business—putting faith in the letter of an e-signed PPA while discounting the consumer's side of the story—should not set the tone for this case. The Court should decline to assume that the PPA demonstrates Ms. Zarate's consent to its terms, and should not dismiss her claims. Ms. Zarate should be allowed to take discovery based on her allegations about what she experienced and those limited facts that can permissibly be drawn from the PPA.



**ELEMENTAL LAW LLC**
7805 SW 40th Ave., #19025
Portland, OR 97280
Tel: 503-926-6303 / Fax: 503-345-6655

Ms. Zarate respectfully requests that the Court deny GoodLeap's motion to dismiss. Alternatively, if the Court identifies pleading deficiencies, she requests dismissal without prejudice and leave to file a Second Amended Complaint within 30 days of the Court's final order granting dismissal.

Submitted this 24th day of August, 2026.

*/s/ Hope Del Carlo*
Hope Del Carlo, OSB No. 002410
ELEMENTAL LAW LLC
7805 SW 40th Ave., #19025
Portland, OR 97280
hope@elemental.law
Tel: 503-789-7372
Fax: 503-345-6655

Attorney for Plaintiff