Jeffrey G. Bradford, OSB No. 133080
Direct: 503.802.5724
Email: jeff.bradford@tonkon.com
Tonkon Torp LLP
1300 SW Fifth Ave., Suite 2400
Portland, OR 97201
Facsimile: 503.274.8779

Brandon Wong (admitted *pro hac vice*)
bwong@manatt.com
MANATT, PHELPS & PHILLIPS, LLP
695 Town Center Dr., 14th Floor
Costa Mesa, CA 92626
Telephone: (714) 371-2500
Facsimile: (714) 371-2550

Attorneys for Defendant GoodLeap, LLC

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

MARIA ZARATE,

Plaintiff,

vs.

FREEDOM FOREVER OREGON, LLC, and GOODLEAP, LLC,

Defendants.

Case No. 3:26-CV-00678-SB

**DEFENDANT GOODLEAP, LLC'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS**

## TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES....1

I. INTRODUCTION....1

II. LEGAL STANDARD....2

III. ARGUMENT....2

A. The Court Should Not Consider the PPA In Deciding the Motion to Dismiss....2

B. Plaintiff Has Not Sufficiently Alleged Direct Liability Against GoodLeap....3

1. Plaintiff Fails to State an Unlawful Trade Practices Act Claim Against GoodLeap....3

2. Plaintiff Fails to State a Financial Abuse Claim Against GoodLeap....5

C. Plaintiff Has Not Sufficiently Alleged Vicarious Liability Against GoodLeap....6

D. Plaintiff's Request for Leave to Amend Should Be Denied....9

1. Leave to Amend Should be Denied Due to Plaintiff's Undue Delay, Dilatory Motive and Repeated Failure to Cure....10

2. Leave to Amend Should Also be Denied Because the "Curative Allegations" Are Subject to Dismissal....11

IV. CONCLUSION....14

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Adelsperger v. Elkside Development LLC*,
568 P.3d 908 (Or. 2025), *opinion adhered to as modified on reconsideration sub nom. Adelsperger v. Elkside Dev. LLC*, 578 P.3d 189 (Or. 2025) ............ 6, 13

*Alldrin v. Lucas*,
260 Or. 373 (1971) ............ 4

*Allen v. City of Beverly Hills*,
911 F.2d 367 (9th Cir. 1990) ............ 10

*AmerisourceBergen Corp. v. Dialysist W., Inc.*,
465 F.3d 946 (9th Cir. 2006) ............ 10

*Beverly v. Cty. of Orange*,
No. 22-55080, 2022 WL 14003695 (9th Cir. Oct. 24, 2022) ............ 10

*Bonin v. Calderon*,
59 F.3d 815 (9th Cir. 1995) ............ 10

*Bothelo v. U.S. Bank, N.A.*,
692 F. Supp. 2d 1174 (N.D. Cal. 2010) ............ 2

*Church v. Woods*,
77 P.3d 1150 (Or. Ct. App. 2003) ............ 5

*Davis v. Davies*,
No. 2:24-cv-449-SI, 2024 WL 4298906 (D. Or. Sept. 26, 2024) ............ 5

*DCD Progs., Ltd. v. Leighton*,
833 F.2d 183 (9th Cir. 1987) ............ 9, 10

*Eminence Capital, LLC v. Aspeon*,
316 F.3d 1048 (9th Cir. 2003) ............ 9

*Foman v. Davis*,
371 U.S. 178 (1962) ............ 9

*Hanif v. Bank of New York Mellon*,
No. Case No. 3:16–cv–1820–SI, 2016 WL 7378991 (D. Or. Dec. 20, 2016) ............ 2

*Hollis v. R&R Rests., Inc.*,
No. 3:21-cv-00965-YY, 2023 WL 2645453 (D. Or. Mar. 27, 2023) ............ 2

*Hunsinger v. Graham*,
404 P.3d 1004 (Or. Ct. App. 2017) ............ 6, 12

*Jensen v. Medley*,
82 P.3d 149 (Or. 2003) ............ 4, 9

*Kearns v. Ford Motor Co.*,
567 F.3d 1120 (9th Cir. 2009) ............ 11

*Lake v. Esposito*,
No. 3:21-CV-601-SI, 2024 WL 1211777 (D. Or. Mar. 20, 2024)....................13

*Lancaster v. Or. Health and Sci. Univ*,
No. 3:24-cv-00916-SB, 20025 WL 2324647 (D. Or. Jan. 10, 2025)....................2

*Meritage Homeowners' Ass'n v. Bank of New York Mellon*,
No. 6:16-CV-00300-AA, 2024 WL 1345683 (D. Or. Mar. 29, 2024)....................4, 12

*Miller v. Goodyear*,
434 F. Supp. 3d 869 (D. Or. 2020) ....................4

*Murphy v. DirectTV, Inc.*,
724 F.3d 1218 (9th Cir. 2013) ....................7

*Royal ins. Co. of Am. v. Sw. Marine*,
194 F.3d 1009 (9th Cir. 1999) ....................10

*Salameh v. Tarsadia Hotel*,
726 F.3d 1124 (9th Cir. 2013) ....................10

*Schmidt v. Noonkester*,
401 P.3d 266 (Or. Ct. App. 2017)....................5

*Schneider v. Cal. Dep't of Corr.*,
151 F.3d 1194 (9th Cir. 1998) ....................4, 5

*Sweidy v. Spring Ridge Academy*,
No. CV-21-08013-PHX-SPL, 2023 WL 5278680 (D. Ariz. Aug. 16, 2023) ....................8

*Torres v. City of Madera*,
No. CIVFF020-6385AWILJO, CV F 03-5999, 2005 WL 1683736 (E.D. Cal. July 11, 2005) ....................7

*Vaughn v. First Transit, Inc.*,
206 P.3d 181 (Or. 2009) ....................3, 9, 11

*Vess v. Ciba-Geigy Corp.*,
317 F.3d 1097 (9th Cir. 2003) ....................11

*Wheeler v. City of Santa Clara*,
894 F.3d 1046 (9th Cir. 2018) ....................9

*Wyers v. Am. Med. Response Northwest, Inc.*,
342 P.3d 129 (Or. Ct. App. 2014)....................12

**STATUTES**

Oregon's Unlawful Trade Practices Act....................3

ORS 124.100 (2), (5) .................... passim

ORS § 124.100(5)....................13

PPA .................... passim

Unlawful Trade Practices Act....................3

## OTHER AUTHORITIES

Restatement (Second) of Agency § 1 cmt. a (Am. L. Inst. 1958) ....... 7

Restatement (Third) of Agency, § 1.02 cmt. a ....... 8

## RULES

Rule 8's ....... 2

Rule 9(b)'s ....... 1, 2, 11

Rule 12 ....... 4

Rule 12(b)(6) ....... 4

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Maria Zarate's ("Plaintiff") Opposition to GoodLeap, LLC's Renewed Motion to Dismiss ("Opposition") effectively concedes that her First Amended Complaint ("FAC") fails to state a claim against GoodLeap, LLC ("GoodLeap") under a direct or vicarious theory of liability for the alleged misrepresentations and forgery of third parties. ECF No. 24 ("Opp'n"). She admits "some details are not yet pleaded" (Opp'n at 4:6) and devotes most of her Opposition to what "she can allege" (*id*. at 12:1), introducing new purported facts and theories (*e.g.*, *id*. at 11:13-12:9; 12:20), and dedicating three pages to new "curative allegations" (*id*. at 16-19).

What "she does know" has everything to do with a third-party salesperson and nothing to do with GoodLeap. *Id*. at 2:3-9. With respect to GoodLeap's purported relationship with that third party, she admits "she has almost no information." *Id*. at 2:3-4. She instead attempts to fill that pleading deficiency with regulatory reports about the solar industry generally (*id*. at 2:10-3:2) and unhelpful facts from the agreement between her and GoodLeap that she contests (*id*. at 4:4-15). Still missing are any allegations of wrongful conduct by GoodLeap to hold it directly liable, or factual allegations supporting an agency theory to hold it vicariously liable.

The Federal Rules do not endorse a shoot first and aim later approach. Plaintiff is required to plead facts now to plausibly allege that GoodLeap engaged in actionable conduct. And because her claims sound in fraud, she must plead them with particularity pursuant to Rule 9(b)'s heightened pleading standard. She has not done so and the FAC should be dismissed. Because this is her second attempt to properly plead after previously being notified of these same deficiencies, and because her new "curative allegations" still fall short, GoodLeap respectfully requests the Court dismiss with prejudice.

## II. LEGAL STANDARD

Though Plaintiff's allegations are deficient under Rule 8's pleading standard, her claims sound in fraud and are subject to Rule 9(b)'s more stringent standard. ECF No. 17 (Mot. to Dismiss FAC ("Mot.")) at 6:17-7:23. Plaintiff does not attempt to rebut this. She acknowledges that allegations of fraud must be plead with particularity (Opp'n at 6:22-7:2) and she applies Rule 9(b)'s particularity standard in her argument (*id*. at 10:21-23). "Generally, failure to respond to an argument in a motion to dismiss is a concession to that argument." *Lancaster v. Or. Health and Sci. Univ.*, No. 3:24-cv-00916-SB, 20025 WL 2324647, at *2 (D. Or. Jan. 10, 2025) (quoting *Hollis v. R&R Rests., Inc.*, No. 3:21-cv-00965-YY, 2023 WL 2645453, at *2 (D. Or. Mar. 27, 2023)). Thus, it is not disputed that Rule 9(b)'s heightened pleading standard applies to the entirety of Plaintiff's claims.

## III. ARGUMENT

### A. The Court Should Not Consider the PPA In Deciding the Motion to Dismiss.

GoodLeap withdraws its request for judicial notice of the Power Purchase Agreement ("PPA"). Plaintiff overstates GoodLeap's reliance on the PPA. GoodLeap's arguments are based on the deficiency of the allegations in the FAC; not facts affirmatively established by the PPA.[1] Moreover, Plaintiff "*does* dispute the authenticity of the PPA." Opp'n at 9:1 (emphasis in original). As such, Plaintiff is correct that the PPA is not the proper subject of judicial notice. Opp'n at 9:8-14; *see also Hanif v. Bank of New York Mellon*, No. 3:16–cv–1820–SI, 2016 WL 7378991, at *2 (D. Or. Dec. 20, 2016) (refusing to consider document under the incorporation by reference

[1] GoodLeap originally sought judicial notice of the PPA with its prior Motion to Dismiss Plaintiff's original complaint as relevant to negate Plaintiff's argument that the Holder Rule applies. ECF No. 8 (Mot. to Dismiss Compl.) at 9-11; ECF No. 1 (Compl.) at ¶ 8. Though the FAC omitted reference to the Holder Rule (Mot. at 5:1-4), GoodLeap again sought judicial notice of the PPA out of an abundance of caution. Since Plaintiff's Opposition confirms she is not seeking to hold GoodLeap liable under the Holder Rule, GoodLeap no longer seeks judicial notice of the PPA.

document where plaintiff disputed its authenticity); *Bothelo v. U.S. Bank, N.A.*, 692 F. Supp. 2d 1174, 1178 (N.D. Cal. 2010) (refusing to take judicial notice of document where plaintiff contested its authenticity).

Plaintiff's attempt to have it both ways and rely on the PPA to cure her pleading deficiencies but contest its authenticity to preclude GoodLeap's reliance on it, should not be allowed. Plaintiff had the PPA and could have attached it to the FAC but did not. Because she now disputes its authenticity, the proper course is to <u>not</u> consider the PPA in ruling on GoodLeap's Motion.

**B. Plaintiff Has Not Sufficiently Alleged Direct Liability Against GoodLeap.**

Glaringly absent from the FAC are any allegations of wrongful conduct by GoodLeap to support Plaintiff's claims under Oregon's Unlawful Trade Practices Act ("UTPA" claim) and Financial Abuse of a Vulnerable Person ("Financial Abuse" claim). Her claims are entirely premised on the alleged misrepresentations of a third-party salesperson of defendant Freedom Forever Oregon, LLC ("Freedom Forever") and the purported forgery by an unknown "person" or "persons." FAC ¶¶ 1, 6, 9, 13, 18. Because she does not allege any wrongful conduct by GoodLeap, she has not properly alleged direct liability against GoodLeap.

**1. Plaintiff Fails to State an Unlawful Trade Practices Act Claim Against GoodLeap.**

Plaintiff does not contest that her UTPA claim is entirely premised on the misrepresentations of a third party and that the FAC does not allege that anyone from GoodLeap visited her home, spoke with her, made any representations to her or otherwise interacted with her. Absent such allegations, her attempt to still seek GoodLeap directly liable under the UTPA fails. The three arguments she makes to oppose dismissal lack merit.

<u>First</u>, Plaintiff doubles down on her allegations of wrongful conduct by third parties and argues that she has alleged the "who, what, when, where, and how of the misrepresentation and

resulting violation of the UTPA." Opp'n at 10:21-23. Those allegations, however, all identify alleged wrongful conduct of third parties—not GoodLeap. Opp'n at 10:13-20. Although those allegations may be sufficient to assert a claim against those third parties, they are woefully insufficient to state a claim for direct liability against GoodLeap.

Second, Plaintiff seemingly attempts to repurpose her agency liability theory to support her direct liability theory by arguing that the "FAC's allegations also plausibly connect the representations made by Torres/Mendoza to GoodLeap." Opp'n at 11:1-2. As set forth in Section II.C., *infra*, Plaintiff has not plausibly alleged agency. The mere fact that GoodLeap was a party to the PPA and sought to subsequently enforce it, is insufficient by itself to hold GoodLeap directly liable for the alleged misrepresentations of a third-party salesperson in the procurement of the PPA.

Third, Plaintiff improperly seeks to amend her deficient FAC through her Opposition by proffering a newly minted ratification theory. Opp'n at 11:13-12:10. The word ratification or any derivative appears nowhere in the FAC. In addition, the FAC alleges no facts to support a ratification theory, which requires allegations that GoodLeap had full knowledge of the material facts constituting the alleged wrongful conduct and intended to ratify the agent's action. *Jensen v. Medley*, 82 P.3d 149, 160 (Or. 2003); *see also Meritage Homeowners' Ass'n v. Bank of New York Mellon*, No. 6:16-CV-00300-AA, 2024 WL 1345683, at *9 (D. Or. Mar. 29, 2024) (citing *Alldrin v. Lucas*, 260 Or. 373, 382 (1971)), *reconsideration denied*, No. 6:16-CV-00300-AA, 2024 WL 2861802 (D. Or. June 6, 2024), and aff'd, No. 24-6479, 2026 WL 352882 (9th Cir. Feb. 9, 2026); *see also Miller v. Goodyear*, 434 F. Supp. 3d 869, 877 (D. Or. 2020) (dismissing ratification theory on Rule 12 motion where complaint lacked allegations of the principal's knowledge of the alleged third-party misconduct).

Plaintiff herself concedes the FAC lacks facts to support an agency theory, instead arguing that she "*can* allege facts sufficient to support GoodLeap's ratification" and then identifying new

purported facts. Opp'n at 12:1-9 (emphasis added). This is improper. Plaintiff's new ratification theory and purported facts cannot be considered in ruling on GoodLeap's Motion to Dismiss. *Schneider v. Cal. Dep't of Corr.*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1998) ("In determining the propriety of a Rule 12(b)(6) dismissal, a court *may not* look beyond the complaint to a plaintiff's moving papers, such as a memorandum in opposition to a defendant's motion to dismiss.") (emphasis in original); *Davis v. Davies*, No. 2:24-cv-449-SI, 2024 WL 4298906, at *3 n. 3 (D. Or. Sept. 26, 2024) ("Nor may a plaintiff effectively amend his complaint by raising a new theory in response to a dispositive motion.") (citations and quotations omitted).

**2. Plaintiff Fails to State a Financial Abuse Claim Against GoodLeap.**

Plaintiff's Opposition confirms that her Financial Abuse Claim is premised on the alleged misrepresentations and forgery of third parties in the procurement of the PPA and GoodLeap's mere enforcement of the PPA. Opp'n at 13:5-7. She then makes the leap that these facts constitute a "wrongful taking" by GoodLeap to hold it directly liable for her Financial Abuse claim. *Id.* at 13:8-11. That is a bridge too far.

The Financial Abuse law is not a strict liability statute—Plaintiff must allege that there was a "taking or appropriation" and that such taking or appropriation was "wrongful." *Schmidt v. Noonkester*, 401 P.3d 266, 269 (Or. Ct. App. 2017). To establish wrongfulness, Plaintiff must specifically allege improper "means" or "motive" attributable to GoodLeap. *Church v. Woods*, 77 P.3d 1150, 1153 (Or. Ct. App. 2003). Plaintiff fails to identify any allegations from the FAC evidencing either. She also does not address GoodLeap's argument or supporting authority confirming the deficiency of her allegations. Mot. at 11:13-12:24.

Plaintiff instead attempts to argue that her allegations are sufficient under ORS § 124.100 (2), (5), which allows a claim against a party for "permitting another person to engage in physical or financial abuse if the person knowingly acts or fails to act under circumstances in which a

reasonable person should have known of the physical or financial abuse." ORS § 124.100 (2), (5); Opp'n at 12:21-22. That argument fares no better. First, Plaintiff failed to assert liability under this theory in her FAC and it should not be considered. *See, e.g.*, *Schneider*, 151 F.3d at 1197 n.1. Second, this theory still requires facts establishing that GoodLeap knew or should have known of the alleged abuse, and no such facts are alleged. *See Hunsinger v. Graham*, 404 P.3d 1004, 1010 (Or. Ct. App. 2017) (affirming summary judgment where defendant lacked mental state required to state a Financial Abuse Claim under ORS § 124.100 (2), (5)).

GoodLeap's receipt of payments under a facially executed contract does not itself create independent improper means or an improper motive. *See, e.g.*, *Adelsperger v. Elkside Development LLC,* 568 P.3d 908, 928, 931 (Or. 2025) ("Defendant acting in its own business interests, based on its own understanding of its legal obligations, is not an improper motive . . . ."), *opinion adhered to as modified on reconsideration sub nom*. *Adelsperger v. Elkside Dev. LLC*, 578 P.3d 189 (Or. 2025); *see also* Mot. at 13:1-24. Ruling otherwise would transform every disputed contract involving a person over 65 into statutory financial abuse. Because the FAC does not allege facts establishing "wrongfulness" or a "taking or appropriation" attributable to GoodLeap, her Financial Abuse claims should be dismissed.

**C. Plaintiff Has Not Sufficiently Alleged Vicarious Liability Against GoodLeap.**

With no allegations of wrongful conduct attributable to GoodLeap, Plaintiff alternatively seeks to hold GoodLeap liable under an agency theory. But Plaintiff does not meaningfully engage with GoodLeap's argument that the FAC's agency allegations amount to legal conclusions of agency cast as factual matters that cannot survive a motion to dismiss. Mot. at 17:20-19:13. In particular, Plaintiff:

- Identifies no factual allegation in the FAC establishing the elements of agency: (1) that GoodLeap consented to have Freedom Forever or unidentified persons act on

its behalf in the alleged fraud and forgery, or (2) that GoodLeap had the right to control these third parties with respect to such conduct. Opp'n at 14:4-15:23.

- Fails to address or attempt to distinguish any of the many cited cases rejecting similar agency allegations at the pleading stage. Mot. at 16:13-17:11.
- Fails to identify any communication or representation by GoodLeap to support apparent authority, though such theory requires Plaintiff's reliance on manifestations by GoodLeap. Opp'n at 12:10-13; 14:7-10.

Plaintiff instead mounts a single paragraph argument (*id*. at 14:11-19), concedes that she has no additional information and needs discovery (*id*. at 14:20-15:2), and finally reverts to rearguing her Financial Abuse claim direct theory of liability (*id*. at 15:3-23).

The lone allegation from the FAC Plaintiff proffers to support her agency theory is that "Freedom and Torres/Mendoza solicited and sold GoodLeap's solar power to Ms. Zarate, and that Torres/Mendoza is the person identified in the PPA as salesperson." Opp'n at 14:11-13. But that allegation does not support either required agency element. "The creation of an agency relationship is bilateral and requires words or conduct from both the agent and the principal." *Torres v. City of Madera*, No. CIVFF020-6385AWILJO, CV F 03-5999, 2005 WL 1683736, at *19 (E.D. Cal. July 11, 2005); *see also* Restatement (Second) of Agency § 1 cmt. a (Am. L. Inst. 1958) ("The relation of agency is created as the result of conduct by two parties manifesting that one of them is willing for the other to act for him subject to his control, and that the other consents so to act. The principal must in some manner indicate that the agent is to act for him, and the agent must act or agree to act on the principal's behalf and subject to his control."). This allegation solely focuses on the conduct of third parties.

In addition, in this specific context, a third party's sale of another's product or service does not, by itself, establish an agency relationship. *See* Mot. at 19:3-7 (*citing Murphy v. DirectTV, Inc.*,

724 F.3d 1218, 1233 (9th Cir. 2013) ("Thus, the supplier-retailer relationship is insufficient to render BestBuy Direct TV's agent.")).

Without any supporting facts in the FAC, Plaintiff argues the PPA cures her pleading deficiencies. Opp'n at 14:13-19. As set forth in Section I, A., *supra*, the PPA is not the proper subject of judicial notice and should not be considered. To the extent the PPA is considered, however, it does not help Plaintiff. The parties' labels and installation-related rights in the PPA do not, plausibly allege agency. The titles "salesperson/contractor", "installer" and "provider" merely identify transactional roles. If anything, the "salesperson/contractor" title indicates an independent contractor relationship—not an agency relationship. More importantly, these transactional titles do not speak to whether GoodLeap manifested assent for the salesperson to act on its behalf with respect to the alleged wrongful conduct, controlled his sales methods, or authorized any alleged misrepresentations. *See* Restatement (Third) of Agency, § 1.02 cmt. a) (Am. L. Inst. 2006) ("Although agency relationship is a consensual relationship, how the parties to any given relationship label it is not dispositive."); *see also Sweidy v. Spring Ridge Acad.*, No. CV-21-08013-PHX-SPL, 2023 WL 5278680, at *6 n. 6 (D. Ariz. Aug. 16, 2023) ("The Court therefore puts little weight into the labels assigned by the Enrollment Agreement in this case—that is, just because the Enrollment Agreement states that the individual Defendants, as SRA staff members, 'operate ... as agents for' Plaintiff does not necessarily mean an agency relationship existed without any consideration of all the other circumstances surrounding the parties' relationship.").

Likewise, GoodLeap's right to approve installation quality does not plausibly allege agency. A contractual right to require satisfactory installation or decline to purchase an inadequately installed system concerns the completed equipment and installation work. It does not evidence control over that work and does not plausibly show GoodLeap's right to control door-to-door solicitations, representations about price, access to consumers' phones, or email creation prior

to any such work. "Agency does not result, for example, when an individual (or entity) simply agrees to provide services for another, even if the other person—through contract—is able to establish general standards for performance and in that way 'control' the individual. That individual simply may be a contractor performing services for another, and not an 'agent' at all." *Vaughn v. First Transit, Inc.*, 206 P.3d 181, 186 (Or. 2009). But that is all Plaintiff alleges.

Indeed, Plaintiff herself merely concludes from these purported facts that "Torres/Mendoza and Freedom were authorized to market and originate GoodLeap's PPA to Ms. Zarate." Opp'n at 14:17-19. There remain no allegations addressing whether GoodLeap consented to have Freedom Forever or unidentified persons act on its behalf in the alleged fraud and forgery or had the right to control these third parties "with respect to the conduct that gave rise to the [] claim." *Jensen*, 82 P.3d at 158. Because the FAC contains no such allegations, the FAC should be dismissed.

**D. Plaintiff's Request for Leave to Amend Should Be Denied.**

"The Supreme Court has set forth several factors that a district court should evaluate in determining whether justice requires granting leave to amend, including 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [and] futility of amendment.'" *Eminence Capital, LLC v. Aspeon*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Leave to amend should be denied "if the proposed amendment is futile or would be subject to dismissal." *Wheeler v. City of Santa Clara*, 894 F.3d 1046, 1059 (9th Cir. 2018). And a district court's discretion over an amendment is "especially broad" where the court has already given plaintiff one or more opportunities to amend the complaint. *DCD Progs., Ltd. v. Leighton*, 833 F.2d 183, 186 n.3 (9th Cir. 1987).

### 1. Leave to Amend Should be Denied Due to Plaintiff's Undue Delay, Dilatory Motive and Repeated Failure to Cure.

Dismissal with prejudice is warranted here because this is now Plaintiff's second attempt to plead her claims (third if the Court considers the "curative allegations" in her Opposition) and she offers no excuse for not including her new proffered allegations in the FAC despite possessing the same information she now seeks to press. Courts in the Ninth Circuit hold that "late amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Royal ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016–17 (9th Cir. 1999); *see also AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006). And where, as here, a plaintiff "presents no new facts but only new theories and provides no satisfactory explanation for [her] failure to fully develop [her] contentions originally," leave to amend is properly denied. *Bonin v. Calderon*, 59 F.3d 815, 845 (9th Cir. 1995) (quoting *Allen v. City of Beverly Hills*, 911 F.2d 367, 374 (9th Cir. 1990)).

Those principles are dispositive here. Every fact in Plaintiff's proposed "curative allegations"—the salesperson's identity and representations, the alleged forgery, the family members' purported communications with GoodLeap, and the parties' respective roles under the PPA—was known to Plaintiff no later than when she filed the FAC—and likely was known well before that. GoodLeap's first motion to dismiss, filed June 22, 2026 (ECF No. 8), identified the very deficiencies GoodLeap presses now and attached the PPA that Plaintiff now contends help cure her pleading deficiencies. Rather than oppose that motion, Plaintiff sought and obtained an extension and then filed the FAC—making only minimal changes and leaving the same defects uncorrected. *See* Mot. at 5:1-7 (summarizing the relevant changes to the FAC). Plaintiff thus already had opportunity to amend and plead the same information she now advances, yet she

"provides no satisfactory explanation" for failing to plead these allegations earlier. *Bonin*, 59 F.3d at 845; *see also DCD Progs.*, 833 F.2d at 186 n.3. The Court is well within its discretion to deny leave to amend for these reasons alone. *See, e.g.*, *Beverly v. Cty. of Orange*, No. 22-55080, 2022 WL 14003695, at *1 (9th Cir. Oct. 24, 2022) (affirming dismissal with prejudice where district court once gave plaintiff leave to amend and she still failed to cure); *see also Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (no abuse of discretion in denying leave where plaintiffs "had ample opportunity to properly plead a case").

**2. Leave to Amend Should Also be Denied Because the "Curative Allegations" Are Subject to Dismissal.**

Plaintiff's "curative allegations" remain deficient. She first includes allegations regarding the parties' titles and installation-related rights from the PPA. Opp'n at 17, ¶¶ 1-2. As set forth in Section II.C, *supra*, such allegations do not plausibly allege agency. She next restates her existing allegation that GoodLeap accepted payments Plaintiff made pursuant to the PPA. *Id.* at 17, ¶ 3. That, too, falls short for the reasons set forth in Section II.B., *supra*. She then restates her existing allegations about third-party sales agent Alex Mendoza's alleged misrepresentations (*id.* at 17, ¶ 4), but those still lack any connection to GoodLeap. She also adds agency allegations (*id.* at 18, ¶¶ 5-6), that do not cure the deficiencies—GoodLeap allegedly "allow[ing]" (*id.* at 18, ¶ 5) the third-party sales agent to solicit and originate the PPA, even if true, does not plausibly allege consent or a right to control generally, and it certainly does not allege a right to control "the agent's actions and specific conduct giving rise to the tort claim." *Vaughn*, 206 P.3d at 187.

Finally, Plaintiff proffers new allegations about alleged conversations between Plaintiff's family members and GoodLeap to support a new ratification theory and "permitting" abuse theory under ORS § 124.100 (2), (5). Opp'n at 18-19, ¶¶ 7-10. Those allegations are still subject to dismissal for two independent reasons.

First, those allegations do not satisfy Rule 9(b)'s heightened pleading standard because they do not address the all-important "'who, what, when, where, and how' of the misconduct alleged." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003)). In particular, the "curative allegations" are vague regarding: the identity of the alleged family members who called GoodLeap; when they allegedly called; with whom they allegedly spoke; what exactly they allegedly reported; what information GoodLeap allegedly received; when GoodLeap allegedly received it; and why that information demonstrated fraud and forgery rather than merely alleging it without proof. They do not plausibly allege that GoodLeap knew financial abuse had occurred, knew the material facts of the alleged misconduct, or knowingly permitted another person to engage in alleged abuse. Such allegations are necessary because of the scienter requirements for a ratification theory of liability and a claim for "permitting" a violation of the Financial Abuse law. *See, e.g.*, *Meritage Homeowners' Ass'n*, 2024 WL 1345683, at *9-10 (defendant must have full knowledge of the material facts under a ratification theory); *Hunsinger*, 404 P.3d at 1010 (knowledge required for "permitting" Financial Abuse claim).

Second, Plaintiff's "curative allegations" advanced to support her new "permitting" theory under ORS § 124.100(2) and (5) are also legally deficient. Plaintiff's Financial Abuse Claim is predicated on alleged discrete wrongful acts. Plaintiff first predicates her claim on the alleged misrepresentations and forgery by the third-party sales agent. FAC ¶ 18. For GoodLeap to be liable "for permitting" that conduct under ORS § 124.100 (2) & (5), Plaintiff must allege that GoodLeap "know of the existence of requisite circumstances **at the time of alleged 'permitting.'**" *Wyers v. Am. Med. Response Northwest, Inc.*, 342 P.3d 129, 136, 140 (Or. Ct. App. 2014) (emphasis added) (holding that an ambulance provider could be held liable under a permitting theory for physical abuse caused by its paramedic based on similar complaints against the paramedic because

complaints to the provider were made "before the earliest incident of abuse alleged in this case."). Here, Plaintiff's vague allegations that GoodLeap was informed of an alleged fraud or forgery **long after it occurred** does not satisfy the requirement that GoodLeap know of the requisite circumstances "at the time of the alleged permitting." As such, GoodLeap could not "permit" the fraud and forgery from occurring. Holding otherwise would effectively render any third party who learns of alleged abuse after it occurs responsible for remedying that abuse.

Plaintiff separately predicates her Financial Abuse claims on GoodLeap's continued enforcement of the PPA. FAC ¶ 18; Opp'n at 19, ¶ 10. That direct theory of liability fails as set forth in Section II.B.2, *supra*. Plaintiff's attempt to reframe those allegations to support a new "permitting" Financial Abuse claim fares no better. Liability under ORS § 124.100 (2), (5) only applies when the defendant is alleged to have permitted the conduct of another person. *See Adelsperger v. Elkside Dev. LLC*, 568 P.3d 908, 928 (Or. 2025) (en banc) (acknowledging that the Legislature "provided the vulnerable person a cause of action . . . against a person **who has permitted another** to engage in financial abuse if 'the person knowingly acts or fails to act under circumstances in which a reasonable person should have known of the . . . financial abuse.'" (quoting ORS § 124.100(5))) (emphasis added); *see also id.* at 928 n.20 ("In other words, the statute does not permit third parties to ignore such conduct under circumstances in which a reasonable person should have known that **a person** has wrongfully taken or appropriated the money or property of a vulnerable person.") (emphasis added); *Lake v. Esposito*, No. 3:21-CV-601-SI, 2024 WL 1211777, at *7 n.12 (D. Or. Mar. 20, 2024) (dismissing financial abuse claim where plaintiff's allegations referenced "only actions . . . involving direct appropriation and withholding of funds from [Plaintiff]—not actions of 'permitting' another to do so"). Here, the alleged legally deficient wrongful conduct (enforcing the PPA) is being done by GoodLeap—not another person. Thus, Plaintiff's "curative allegations" do not supply any allegations that

GoodLeap "permitted" any other party to do anything.

## IV. CONCLUSION

Despite now having three attempts to plead her claims (Complaint, FAC and "curative allegations"), Plaintiff still cannot do so. That is because there are no facts that GoodLeap engaged in any wrongful conduct or that the third parties who allegedly engaged in wrongful conduct did so under GoodLeap's direction and control. For the foregoing reasons, GoodLeap respectfully requests that the Court grant the Motion and submits that dismissal with prejudice is the appropriate course here.

Dated: September 8, 2026

Respectfully submitted,

MANATT, PHELPS & PHILLIPS, LLP

/s/ Brandon Wong
Brandon Wong (admitted *pro hac vice*)
695 Town Center Drive, 14th Floor
Costa Mesa, CA 92626
Telephone: (714) 371-2500
Facsimile: (714) 371-2550
bwong@manatt.com

TONKON TORP LLP

Jeffrey G. Bradford (OSB No. 133080)
1300 SW Fifth Ave., Suite 2400
Telephone: (503) 802-5724
Facsimile: (503) 274-8779
jeff.bradford@tonkon.com

*Attorneys for Defendant GoodLeap, LLC*

**CERTIFICATE OF SERVICE**

This brief complies with the applicable word-count limitation under LR 7-2(b) because it contains 4,425 words, including headings, footnotes, and quotations, but excluding the caption, table of contents, table of cases and authorities, signature block, exhibits, and any certificates of counsel.

**CERTIFICATE OF SERVICE**

I hereby certify that on the date given below, I electronically filed the foregoing Defendant GoodLeap, LLC's Reply In Support of Its Motion to Dismiss with the Clerk of the Court using the CM/ECF system which will send electronic notification of such filing to the following persons:

Hope Del Carlo, Esq. (hope@elemental.law)

DATED this 8th day of September, 2026, at Placentia, California.

/s/ Brandon Wong
Brandon Wong